## Love *against* Jones.

The action of covenant is the appropriate and most definitive remedy where, in affirmance of the contract, a vendor seeks to recover the purchase money upon articles of agreement for the sale of land, the vendee not having entitled himself to a deed by fulfilling his part thereof.

Advantages of this remedy over that by ejectment.

As in covenant the vendor cannot, in general, recover a judgment in affirmance of the contract without a tender of a deed conformably to the agreement, the court should require the deed to be filed by the prothonotary, for the benefit of purchasers at the sale under such judgment.

The plaintiff in such execution sells all the estate in the land which he agreed to sell to the defendant. If, therefore, he agreed to sell a fee, the purchaser under such execution acquires the fee, and not the mere equitable estate.

The vendor's lien under a judgment, confessed, in such action, one hour after the delivery of a deed of the land to the vendee, has preference over that of judgments entered prior to such delivery, but subsequent to the agreement of sale. The delivery of the deed does not extinguish the vendor's claim on the land so as to admit those liens on the legal estate in fee.

Such a deed and confession of judgment will receive a contemporaneous operation so as to promote the intent of the parties ; which, being to continue the priority of the vendor's lien, is clearly lawful.

If all the parties to the articles of agreement and deed are satisfied of the sufficiency of the defendant's title to the land, it is not competent for his other judgment creditors to object, after a sale thereof under the vendor's execution, that the defendant had but an *equitable* estate, so as to obtain a preference for their judgments over the vendor's, which bound the *legal* estate.

APPEAL from the common pleas of *Westmoreland* county.

The real estate of Henry Stouffer was sold by the sheriff upon an execution, and the proceeds were brought into court for appropriation; and the question arose whether the judgment of Hugh Love's executors was entitled to priority of payment over other judgments entered before it, under the following circumstances. On the 3d of May 1813 Hugh Love sold to Henry Stouffer a tract of land containing three hundred and twelve acres one hundred perches, for 20 dollars an acre, and agreed to convey clear of incumbrances on or before the 1st of October 1813. Stouffer agreed to pay 2666 dollars 67 cents upon the execution of the contract, and 500 dollars a year until the whole was paid, for which he was to give his bonds when the title should be made. This agreement was recorded the 12th of September 1814. Stouffer paid, on the 3d of May 1813, 2666 dollars 67 cents; 31st of March 1814, 500 dollars ; 1st of April 1815, 500 dollars; 10th of May 1819, 422 dollars ; from that time until May 1829, 220 dollars, and 95 dollars afterwards. To enforce the payment of the balance of the purchase money, Love's executors brought an action of covenant on the agreement in 1823. On

IV.—3 I

[Love v. Jones.]

the 30th of August 1832 this entry was made on the record ; "and now, to wit, 30th of August 1832, at twelve o'clock, noon, the defendant confesses judgment to the plaintiff for 3862 dollars 61 cents damages ; being for the balance due on the purchase of a tract of land described in the declaration." Upon this judgment executions were issued, and the land was sold for 2700 dollars.

The judgment creditors of Henry Stouffer claimed the money : their judgments had been entered at several periods from 1823 until 1831. A deed of conveyance was made by Hugh Love and wife on the 1st of May 1818, and this indorsement was upon it, "delivered to Henry Stouffer *August 30th,* 1832, *at eleven o'clock, A. M.* :" also a deed from A. B. Chessam and wife and others, to Henry Stouffer, for the same land, dated the 16th August 1832, and having the same indorsement upon it as to delivery. The court below (Young, president) was of opinion that Love's executors were entitled to the money, and decreed accordingly. The judgment creditors appealed.

*Armstrong,* for appellants. The judgments were liens upon the equitable title. Duncan *v.* Wallace, 2 *Dall.* 205 ; Carkhuff *v.* Anderson, 3 *Binn.* 4. By the agreement Love was bound to make the title in October 1813, and in consequence of a defect in title, which was remedied by the deed of A. B. Chessam in 1832, he had been in default in complying with his contract for nineteen years; although he had received his hand money, which was all he was entitled to before he made the conveyance.

We deny that the delivery of the deeds, and the confession of the judgment constituted but one and the same act between the parties. How are the facts as exhibited on the record ? A deed from H. Love, the vendor, to Henry Stouffer, is signed, sealed and acknowledged, and a receipt indorsed for the full amount of purchase money, on the 1st day of May 1818, and on the back of said deed is this indorsement : *Delivered to H. Stouffer on the 29th day of August* 1832, *at eleven o'clock, A. M.*

The judgment confessed by H. Stouffer, in the action of covenant brought by Love's executors to February term 1823, *is dated the 30th day of August* 1832, *at twelve o'clock, A. M.* Now that these several transactions, performed at three several, distinct and remote periods of time can constitute but one and the same individual act, and operate by relation so as to render the acts and liabilities of Stouffer to third persons inoperative, and suspend the liens of the judgments against Stouffer in the meantime, is somewhat incomprehensible. Lynch *v.* Dearth, 2 *Penns. Rep.* 101.

The deed from H. Love and wife to Stouffer for the two hundred and five acres and forty perches not having been delivered in the lifetime of Love, is a mere nullity, and the delivery of it by the executors of Love *without any authority,* vested no title in Stouffer.

One of the principal requisites of a deed is, that it be *delivered* by the party himself, or by his certain attorney; and a deed takes effect only from the time of delivery ; and this delivery may be either

[Love v. Jones.]

absolute, that is, to the grantee himself; or to a third person, to hold till some condition be performed on the part of the grantee; in which last case it is called an *escrow.*   2 *Bl. Comm.* 306, 307; *Co. Litt.* 36, *a.*

'Where A, living in New York, agreed with B of Massachusetts to give him a deed of his farm as a security for a debt, and accordingly executed a deed to B in 1808, and left it at the clerk's office to be recorded, neither the grantee nor any person in his behalf being present to receive it, and the grantee died in 1809; in 1810 A sent the deed to his heir, and it was held that there was no delivery.   Jackson *v.* Phipps, 12 *Johns.* 418.

The deed not having been delivered by the grantor in his lifetime to a third person, for the use of the grantee, it did not even partake of the nature of an *escrow.*   It remained in Love's possession until the time of his death, and fell into the hands of his executors with his other papers; and a delivery by them could not vest the legal title in Stouffer.   The only possible way by which the legal title could pass, would have been by a proceeding under the act of 31st of March 1792, which provided a mode for carrying the contracts of decedents into effect; and the court below extended to the plaintiffs the benefit of this act, without their even attempting, on their part, to conform to any of its provisions.

The judgment, therefore, confessed by Henry Stouffer in favour of Love's executors, operated merely as a lien against Stouffer's equity in the land; and as the legal title to the two hundred and five acres and forty perches remained in the heirs of Love, there was nothing sold by the sheriff, under the execution, but Stouffer's equity, and the purchaser got this equity subject to the payment of the balance of the original price of the land; therefore we contend that the creditors of Henry Stouffer, having liens against his equity in the land, are entitled to payment out of the proceeds according to their priority, and the judgment of the plaintiff, being posterior in point of time, will be postponed until the others are satisfied.

The judgment creditors of a vendee of land who has paid part of the purchase money, and has possession of the land, but has received no deed, are entitled to the proceeds of the sale of his title, under an execution, in preference to the vendor.   Auweter *v.* Mathiot, 9 *Serg. & Rawle* 397.

But there is yet another point of view in which I am desirous of presenting this matter before the court.   It is not easy to conceive any reasonable motive that could induce Stouffer to confess a judgment for a sum so far exceeding in amount that to which the plaintiffs were entitled by their contract, and which they could have legally demanded.   This judgment was not given with any view of compromise, or of prolonging the time of payment; for he does not provide for a stay of execution even for a day, for the execution immediately followed the confession of judgment.   This action had been pending for nine years, and no disposition was ever manifested

[Love v. Jones.]

on the part of the plaintiffs to bring it to trial. Stouffer had paid 4403 dollars of the purchase money; 1201 dollars only remained to be paid; the trial of the action of covenant was not urged upon him; it was not on the trial list at the time; but Henry Stouffer suddenly comes in, and voluntarily confesses a judgment for the sum of 3862 dollars, gives a levy on the land, waives the necessity of holding an inquisition by his written agreement on the back of the writ, and submits to the sale of his land without making even an effort to redeem the large amount of interest which he had in it.

But we contend that Henry Stouffer should not be permitted ot enter into any new arrangement with the representatives of Love which would be prejudicial to, or destructive of, the vested rights of his creditors; for if Love and his representatives were in default, and were entitled to recover of Stouffer (after tendering him a title for the land) the balance of the purchase money merely, then the confessing of a judgment by Stouffer for a sum so far exceeding the true balance, would be a fraud, in law, on the part of Stouffer, against his creditors; and the representatives of Love being party and privy to that fraud, the judgment confessed in their favour was void as to those creditors, and should be postponed until their judgments are satisfied.

If a husband give a fraudulent mortgage to defeat his wife's right of dower, it is void as to that right, and as to creditors. Killinger v. Ridenhauer, Administrator of Smith, 6 *Serg. & Rawle* 531.

If a bond be taken for more than the real debt, with an intent to defraud the creditors of the obligor, the whole bond is void as against the creditors. Whiting v. Johnston, 11 *Serg. & Rawle* 328.

*Alexander*, for appellee.

The opinion of the Court was delivered by

KENNEDY, J.—The question here is, who has the first lien in point of time on the money arising from the sale of the land? If Stouffer had done every thing required on his part by the articles of agreement for the purchase of the land, to have entitled him to have demanded and to have received a deed of conveyance therefor, there might have been perhaps some ground for claiming that the liens of the judgment creditors ought to be preferred to that of the vendor, for the unpaid part of the purchase money of the land. He had paid, it is true, all that portion of the consideration money, which he was bound to pay in order to give him a right to a conveyance investing him with the legal title; but then he was bound also by the terms of his agreement to have given his bonds, securing the payment of the residue, which he never did, nor even offered to do. But it is said that Love, the vendor, was unable to make a title for the whole of the land; that the legal title to seventy-five acres of it was not in him; and that Stouffer, the purchaser, was therefore excused from tendering his bonds. If the seventy-five acres were so

[Love v. Jones.]

connected with the residue of the land contracted for, that the main object of the purchase could not have been obtained without them, then it may be, that, if Stouffer had wished to have set the contract aside *in toto* on that ground, it would have been sufficient for him to have called upon Love, and to have told him that he was ready and willing to give him his bonds for the residue of the purchase money, provided he, Love, would make him a good title for the whole of the land; and Love, in reply, had admitted that he was unable to make such title: but Stouffer does not appear at any time to have been desirous to rescind the contract; nor does he seem to have questioned Love's ability to make such title as he was willing to accept; on the contrary, he seems to have been anxious to pay as long as he was able, without ever asking for a title. Neither does it appear that he ever made any objection to the title that Love had to the land; and if he had, for aught we know, Love might have had it in his power, in case the objection had been good, to have removed it immediately. Stouffer, however, so far from showing any dissatisfaction with Love's title to the land, or on account of his (Stouffer's) not getting it, continued to hold the possession of the whole of the land, and to receive the rents, issues and profits thereof from May 1813, the time when the contract was made for the purchase, until the last of August 1832, a period of nearly twenty years, when it was finally consummated between them. Now as long as Stouffer manifested his determination to hold the land under his contract for the purchase of it, and made no objection to Love's title, it cannot be questioned that he was bound to give, or at least to tender, the security agreed on for the payment of the residue of the purchase money before, or at the same instant that he demanded a deed of conveyance under his contract. This, however, not being done by Stouffer, can it be doubted that Love had the right to retain the title as his security in place of the bonds, and in the mean time to receive the instalments of the purchase money as they became payable, and were paid to him? To say that he was bound to part with his title to the land, and to vest it in Stouffer, without receiving the bonds of Stouffer in return for it, would be to lay down a proposition contrary to the express terms of the agreement. Stouffer, however, it would seem, satisfied that Love should retain the title as a security for the payment of the residue of the purchase money, instead of giving his bonds for it, continued to pay it for some time as it became payable, but at length failed to do so, until the whole of the residue became payable. Now if Love had a right to withhold the title before the purchase money became payable, as long as Stouffer neglected to give his bonds securing the payment of it, it is manifest that the circumstance of its having all become payable could not deprive him of this right, or tend to diminish it in the slightest degree; so far from it, it gave him a right to demand the money instead of the bonds, because nothing but the money, with interest thereon from the time it became payable, could be

[Love v. Jones.]

considered an adequate compensation for not having given the bonds, and made payment thereof according to their tenor. The whole of the purchase money having become payable, nothing can be more clear than that Stouffer had no right, then, to demand and receive a deed of conveyance from Love or his representatives, without paying or tendering all that remained unpaid of it: how then is it possible that persons claiming to have a benefit from the purchase, by means of their contracts made with Stouffer, can have a right to be placed in a better situation than Stouffer himself? It is only because he had acquired an interest in the land, that his creditors can have a claim upon it to satisfy their debts; and beyond the interest or right of Stouffer in the land, they can have no right or claim upon it whatever: but Love's right to the land, until he be satisfied for the balance of the purchase money, is paramount to Stouffer's, and of course to all right that his creditors can have to be paid their debts out of it.

But it has been contended that Love's representatives, by delivering to Stouffer the deeds conveying to him the legal title in fee of the land, at the instant of such delivery not only vested the legal title in him, but parted with their claim, if they had any, on the land for the residue of the purchase money; so that the judgments then in being against him, obtained after his agreement for the purchase of the land, became immediately liens, according to their seniority, upon the whole legal estate in fee: and that the judgment confessed by Stouffer to the representatives of Love being an hour after the delivery of the deeds, could not operate so as to preserve the lien on the land for the balance of the purchase money, because that was extinguished by the previous delivery of the deeds. It is evident, however, that the delivery of the deeds to Stouffer, and his confession of the judgment an hour afterwards for the residue of the unpaid purchase money, were but parts of the same transaction, done in pursuance of the same agreement, and were to have such operation only as would most effectually promote the intention of the parties, so far as it was lawful. Now it is impossible to mistake, or not to perceive that the intention of the parties was to preserve and to continue to the representatives of Love their priority of claim to be satisfied, out of the land, the balance of the purchase money remaining unpaid, in preference to all other claims against Stouffer. That this was both lawful and just has already been shown; and, by giving to the delivery of the deeds and the confession of the judgment a contemporaneous and connected operation, this object is attained. If Love's representatives, upon the delivery of the deeds to Stouffer, instead of taking the judgment from him, had taken a mortgage upon the land, securing the payment of the balance of the purchase money unpaid, it could not have been argued for a moment that such arrangement would not have preserved to them their right to have had it paid first out of the proceeds of the sale of the land: such arrangements are frequently

made with this view, and have been considered effectual. In principle, then, there is no reason why a judgment should not, in this respect, answer the same purpose ; because, in such case, the mortgage is considered but a security for the payment of the money, operating as a lien upon the land ; and the judgment is, in like manner, a security for it, operating also as a lien upon the land.

But there is also another aspect in which this case has been presented by the counsel for the judgment creditors that it may be proper to notice.  It is alleged that the deed of conveyance, signed and sealed by Love in his lifetime, was never delivered by him ; and that the delivery of it to Stouffer by the executors of Love was inoperative, inasmuch as they had no authority under the will to-do so ; and that consequently the legal estate was never vested in Stouffer ; and it was therefore only the equitable interest which he had acquired under his executory contract for the purchase of the land that could have been taken in execution and sold, the proceeds whereof must be applied to the discharge of the judgment liens on such equitable interest, according to their priority of date.  Now it is very certain that this view of the matter never entered into the minds of Stouffer and the representatives and devisees of Love ; for they all considered Stouffer, after the delivery of the deeds of conveyance to him, and the confession of the judgment by him, as being vested with the legal title to the fee simple estate in the land.  They all then being perfectly satisfied that it was so, what right have the judgment creditors of Stouffer to interpose this objection ?  Stouffer was satisfied, and considered himself invested with the legal title to the land ; and those claiming the estate of Love under his will were also perfectly satisfied that it should be so, and considered themselves divested of all right to the land, saving their claim to be paid the balance of the purchase money out of it ; and with this understanding by them all round, the land was levied upon and sold as the legal estate in fee of Stouffer ; so that if a stranger had become the purchaser of it, his right to the fee simple estate therein could not have been questioned upon any just or equitable ground.

This case is also susceptible of another view, which opposes itself no less strongly to the claims of the creditors of Stouffer upon the money arising from the sheriff's sale.  It is this, that where an executory contract has been made for the sale of land, in pursuance of which the vendee has obtained the possession thereof, but not the legal title, and the whole of the purchase money having become payable, a part or the whole whereof remains unpaid, the vendor institutes an action founded upon the *contract,* and in affirmance thereof obtains a judgment for the recovery of the money, under which he levies upon and sells the land, he must be considered as selling all that estate in the land, whatever it may be, which he agreed to sell and convey to the defendant.  The vendor being the plaintiff in such case, and the owner of the legal estate, has the right to agree that such shall be the effect of the sale by the sheriff under

[Love v. Jones.]

his judgment; and in order that complete justice may be done to all concerned, without delay, and with as little expense as possible, it is right and necessary that the agreement of the plaintiff to this effect should be implied from his having caused the land to be levied on and sold under his judgment.

By giving this effect to the sale, complete justice is more likely to be done, perhaps, to every one concerned, than could be had in any other course of proceeding that could be adopted. It will enable those who have a notion of levying, to ascertain beforehand, with certainty, the nature, extent and value of the estate that is about to be sold; which is indispensably necessary in order to obtain any thing near a fair price for it. The precise nature and extent of the estate being known at the time of the sale, and it being known also that it is to be sold free and discharged from all incumbrances, it is clear that every possible inducement which can be afforded in a cash sale, is held out by this course, to encourage persons, disposed to buy, to give the full value of the estate. It is all important to employ the means most likely to produce this end, because, unless a fair price can be obtained, it is certain that a loss must fall upon some of the parties interested. The sale being thus effected under regulations suited to obtain, as it would seem, the highest possible price for the land, it only remains, in order to effectuate justice, that the money or price should be distributed among the parties according to the priority of their respective liens. That the claim of the vendor to the unpaid purchase money, if he has any lien at all as vendor, stands first in the list of liens, and must therefore be paid in preference to all others, cannot be questioned: after this, all other liens must be paid according to the priority of their respective dates. Principles of policy as well as justice seem to favour and support this doctrine strongly: because, while it secures to all parties the full benefit of their respective rights, it gives to the vendor, by one action alone, all that he could obtain otherwise by two, or more in many instances. For if, after obtaining his judgment for the recovery of the purchase money remaining unpaid, it were to be held that he could have nothing sold under it but the vendee's equitable interest in the land, and that the proceeds thereof must be appropriated first to the satisfaction of all liens thereon prior in date to that of the vendor's judgment, and growing out of the acts of the vendee; and the money arising from the sheriff's sale should, from this or any other cause, prove insufficient to satisfy the vendor's claim, he must then, if the vendee be without other means to satisfy his judgment, have recourse to an action of ejectment in order to get the land back. Again, after having recovered the possession of it, the vendee may, by some means, raise the unpaid purchase money, with the interest due thereon, and tender the same to the vendor, and demand of him the possession of the land again. But the vendor having made his arrangements with a view to reside permanently upon the land, and having been subjected to the loss of both time and money in regain-

[Love v. Jones.]

ing the possession, may be unwilling to give it up, and therefore refuses to do so: and this may give rise to another action; for I think it has never been decided that the recovery of the possession of the land by the vendor in an ejectment, on account· of the purchase money not having been all paid after it had become payable, deprived the vendee for ever thereafter of all right to tender what remained unpaid of the purchase money,·and thereupon to demand possession of the land again—on the contrary, it was said by this court, in Mitchell's Lessee *v.* Roche, 1 *Yeates* 13, that the vendee, upon tendering the money, could recover the land back.    Or suppose the vendor, after the recovery of the land by him in ejectment, should sell it for a much larger sum of money than the amount of the original purchase remaining unpaid, is it not likely that the first vendee would claim the surplus, and thus make it the subject of a suit between them ?    The action of ejectment, then, at best, would seem to be but an indefinite remedy for the vendor against his vendee, who has failed to pay the consideration money; whereas the remedy by an action founded upon the contract in affirmance thereof, and a sale of the land under a judgment obtained therein, is not only free from such objection, but is well adapted, in every respect, to settle definitively the rights of all parties connected with, or having an interest in, the purchase, and to put an end to all further litigation on account of it ; and therefore is strongly commended by the maxim *interest reipublicæ, ut sit finis litium.*    In regard to this remedy it may be proper, as the vendor, in most instances, cannot obtain a judgment in affirmance of the contract of sale for the whole or whatever may remain unpaid of the purchase money, without having made and tendered a deed of conveyance to the vendee in conformity with his agreement, that the court in which the judgment is obtained should require it to·be filed in the prothonotary's office before a sale of the land, for the benefit of the purchaser, whoever he may happen to be. And if it should be in any case that such a judgment has been obtained by the vendor, without his having made and tendered such deed as is required by his agreement, it would seem to be right that the court should require him to make and file such in the prothonotary's office before he shall be permitted to sell the land under an execution sued out upon this judgment: because it will show that the vendor has parted with his title to the estate in the land that is about to be sold by the sheriff; and, what may be of much more importance still to the interests of the defendant and his other creditors, it may induce the purchaser to give a full price for the estate where, by the deed, he will have the benefit of covenants by the vendor for the future and quiet enjoyment of it, and the goodness of the title.

An objection has also been made to the amount of the claim of the vendor in this case.    But the amount appears to be nothing more than the balance remaining unpaid of the principal of the purchase money and interest thereon at the rate of six per cent per annum, from the times that it became payable.    The vendee having been

[Love v. Jones.]

in the possession of the land and in the receipt of the rents, issues and profits of it during the whole of the time for which interest is charged, there is certainly no good reason shown, either legal or equitable, why it ought not to be allowed.    It is not pretended that Stouffer, the vendee, had the money lying by him unemployed ready to pay it as soon as he should receive a title for the land ; and even if he had, he ought to have given notice thereof to the vendor.    But in the absence of such notice, if he had the money, it must be presumed that he had it out on use, and received interest upon it ; and being a trustee of the purchase money for the vendor, he is bound to pay over such interest.    But if he had not the money either ready by him or out upon use, the vendor is still entitled to the interest as well as the principal, because the vendee's full enjoyment of the land is considered equivalent to his receiving interest on the money for the vendor.

The decree of the court is affirmed.