# Snyder's Appeal.

S. conveyed a property to T., about three o'clock in the afternoon, taking at the same time a judgment-note for the unpaid purchase-money. She returned to her home at once, but owing to the lateness of the hour and the condition of the weather and the roads could not that night go to Somerset, which was the county seat, eight miles distant. She started early the next morning, and reached the prothonotary's office before it was opened, and entered the judgment within fifteen hours from the delivery of the deed. *Held*, that the delivery of the deed and the entry of the judgment were a continuous act, so as to give effect to the judgment as a lawful continuation of the lien for purchase-money, and judgments which had been entered against the equitable estate of T. were not entitled to priority.

October 28th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Somerset county:* Of October and November Term 1879, No. 374.

Appeal of Samuel Snyder, administrator of Stephen Trent, de-

ceased, from the decree of the court confirming the report of the auditor to distribute the proceeds of a sheriff's sale of the real estate of Charles Trent.

In 1872, Harriet Snyder, by a parol contract, sold a tract of land to Charles Trent for $2400, of which $800 was to be paid in hand, and the balance in annual payments of $150. The deed was not to be executed until the hand-money was paid. Trent took possession, paid at different times $898 of the purchase-money, and made improvements on the land. On February 19th 1877, Stephen Trent entered a judgment for $438 against Charles Trent, and on November 6th 1877, Samuel Snyder entered a judgment for $315 against Charles and Stephen Trent. For the purpose of executing the deed Mrs. Snyder and Charles Trent were to meet at the house of the latter, about eight miles from Somerset, the county seat, on the 23d of November 1877. The notes for the unpaid purchase-money were then to be made, and a justice of the peace was to be present to prepare and take the acknowledgment of the deed.

Mrs. Snyder, who was a widow, in feeble health, and who, on that occasion, had no male person about her house, except a son aged about seventeen years, made preparation to go to Somerset after the delivery of the deed and notes, and went to Trent's house distant about a half mile from where she lived, at eight o'clock, A. M., of said day, for the purpose of executing the deed, &c. The justice not being there, she returned to her home, and when the justice arrived at Trent's house, they sent for her. This was between one and two o'clock, P. M., of said day, but owing to the delay caused by sending for a person to witness the deed, and the settling of disputes that arose between the parties, the deed was not delivered until late in the afternoon, between three and four o'clock, at which time Trent gave her two judgment-notes, one for $323.41, the balance then due, and one for $850, the amount of the deferred payments. Mrs. Snyder returned to her home immediately, but owing to the lateness of the hour, the condition of the weather and the roads, could not go to Somerset that night, but started early the next morning, and reached Somerset before sunrise and before the prothonotary's office was open, and the notes for the balance of the purchase-money were entered of record as soon as the prothonotary's office was opened, and within fifteen hours after the delivery of the deed.

On the 8th of November 1878, the real estate of Charles Trent was sold upon a writ of *venditioni exponas*, issued upon one of the judgments of Harriet Snyder, for the sum of $1000. The sheriff brought the money into court, and on the 22d of November 1878, upon the petition of the sheriff, an auditor was appointed to distribute the fund arising from the sale. On the hearing before the auditor the money was claimed by Stephen Trent and Samuel Snyder, whose judgments had been entered against the equitable

estate of Charles Trent, and who claimed that their judgments had priority over that of Harriet Snyder, by reason of her judgment not having been entered on the day the deed was delivered. The auditor held that, under the circumstances, the delivery of the deed and the entry of the judgment was a continuous act, and distributed the money to the judgments of Harriet Snyder. Exceptions were filed to the auditor's report, but the court dismissed them and confirmed the report. From this decree of the court, Samuel Snyder, administrator of Stephen Trent, deceased, took this appeal.

*Valentine Hay*, for appellant.—Judgments against the vendee bind every kind of equitable interest that he may have at the entry thereof, and the lien fastens upon the legal title, *eo instanti*, it is conveyed to him: Waters's Appeal, 11 Casey 523; Brown *v.* McCormick, 6 Watts 64.

Price on Limitations and Liens, p. 240, says: "Although the equitable title of the vendee be bound by judgments against him, the vendor, on conveying the legal title, may take a mortgage or judgment for the purchase-money, or make the deed subject to it, which will have priority of lien over the previous judgment against the vendee: Episcopal Academy *v.* Frieze, 2 Watts 16; Love *v.* Jones, 4 Id. 465. But such security must be taken in the same transaction in which the deed for the title is delivered and be entered of record; a judgment on the same day, the mortgage within sixty days, or the priority of the lien for purchase-money will be lost, and the lien on the previous equitable title will be let into a priority upon the legal as well as the equitable title: Wath *v.* Steel, 1 Barr 386; Hepburn *v.* Snyder, 3 Id. 78; Lyon *v.* McGuffey, 4 Id. 126."

We think there are no exceptions to the rule, and should be none. If distance from the county seat, sickness, want of facilities and such like, would continue or preserve the lien of the vendor for one whole day after delivery of deed, why not for two or ten days, under certain circumstances? The equities in one case might be as strong after the lapse of ten days as in another after one day.

*J. L. Pugh* and *W. H. Koontz*, for appellee.—The rule that a judgment against the equitable estate attaches to the legal title is a fiction of law, and as such should only be invoked for the furtherance of justice, and should "not be carried further than the reasons which introduced it necessarily require:" 1 Lilly's Abr. 610; 2 Hawkins Pl. Cr. 320; Best Pres., 20. The transaction should have such operation as would most effectually promote the intention of the parties. By giving to the delivery of the deeds and the confession of judgment a contemporaneous and connected operation, this object is attained: Love *v.* Jones, 4 Watts 470; Foster's Appeal, 3 Barr 81.

[Snyder's Appeal.]

Chief Justice SHARSWOOD delivered the opinion of the court, November 10th 1879.

Applying a very strict rule to the case before us, any interval of time however short between the delivery of the deed and the entry of the judgment for the purchase-money, ought to let liens upon the vendee's equitable title in upon the legal estate, according to their priority. But *apices juris non sunt jura.* A different principle was therefore adopted in Love *v.* Jones, 4 Watts 465, in which Mr. Justice Kennedy said: "It is evident, however, that the delivery of the deeds to Stauffer (the vendee) and his confession of the judgment an hour afterwards for the residue of the unpaid purchase-money, were but parts of the same transaction, done in pursuance of the same agreement, and were to have such operation only as would most effectually promote the intention of the parties, so far as it was lawful." It is true that it was decided in Watt *v.* Steel, 1 Barr 386, that a judgment for residue of purchase-money entered up a day after the vendor had conveyed the legal title, did not exclude a prior judgment against the vendee. In that case, however, there was an evident break in the transaction, and for all that appeared it would have been entirely practicable to have proceeded to the seat of justice and entered up the judgment on the same day. In Jacob's Appeal, 11 Harris 480, Mr. Justice Lewis said: "The administrator of Samuel Jacobs conveyed to Grove on Saturday evening, the 19th of May 1849, taking at the same time judgments for the unpaid purchase-money. This transaction took place sixteen miles from Gettysburg, the seat of justice. It was unreasonable to require the entry of the judgments that night. It was equally unreasonable to expect them to be entered the next day, which was Sunday. They were regularly entered on Monday." It is true that he distinguishes the case from Watt *v.* Steel, by the consideration that this was the act of an administrator under an order of the court, and that the act of the law does not receive so strict a construction. But so far as respects the rights of the prior judgment, it seems to be a distinction without a difference. Both cases were within the rule as originally announced in Love *v.* Jones, that the whole proceeding must be one continuous act clearly evincing that it was the intention of the vendor to preserve the lien of the purchase-money. In the case before us, according to the facts as reported by the auditor, it is very apparent that both parties intended to continue the lien, and so he reports. The judgments were to have been entered up on the same day, but from a circumstance not within the control of either party, the deed was not delivered until late in the afternoon, and the judgment was entered in the prothonotary's office the next morning as soon as it was open. We think, with the learned auditor whose report was confirmed by the court below, that this was all one continuous transaction—all done within the space of a day—within twenty-four

hours—and it is entirely within the spirit and principle of the authorities to give effect to the judgment as a lawful continuation of the lien for the purchase-money.

> Decree affirmed and appeal dismissed at the costs of the appellant.