NEW-YORK,
October, 1811.

JACKSON
v.
KETCHUM.

JACKSON, *ex dem.* BRYANT, *against* KETCHUM and another.

THIS was an action of ejectment, for land in *Brunswick*, in the county of *Rensselaer.* The cause was tried, at the *Rensselaer* circuit, on the 5th *June* last, before Mr. Justice *Spencer*.

Both parties claimed to hold under *Norris Pearce.* A judgment was recovered the 29th *Feb uary*, 1808, by *James Cox* against *Norris Pearce*, an absconding debtor, on which a *fi. fa.* was issued, by virtue of which the sheriff sold the premises in question, and executed a deed for the same to *Cox*, dated the 22d *August*, 1808. *Cox* gave a deed of *quitclaim* for the same land, to the lessor of the plaintiff, dated 14th *July*, 1810.

The defendant gave in evidence the record of a judgment, in an action of ejectment, brought on the demise of the defendant against *Jacob Whyland* and *James Cox*, junior, for the same premises, and which was tried, at the *Rensselaer* circuit, in *June*, 1810, when a verdict was found for the plaintiff, and a judgment entered thereon, in *August* term, 1810. It was admitted, that that suit involved the same questions as arose in the present, as to the premises, which were worth 2,500 dollars; and that *Bryant*, the lessor of the plaintiff, bought the premises of *Cox*, for 300 dollars, *knowing* at the time, of the former suit, trial and verdict. It was then objected, on the part of the defendants, that the deed from *Cox* to the lessor, was inoperative and void; but the judge overruled the objection. The defendants then gave in evidence, an attachment issued the 5th *May*, 1803, against the real and personal estate of *Pearce*, as an absconding debtor, and the proceeding under the act for relief against absconding and absent debtors, and a deed for the premises in question, from the trustees appointed

A. in an action of ejectment against B. which was tried in *June*, 1810, recovered a verdict for land, worth 2,500 dollars, against the defendant, on which a judgment was entered in *August* following. In *July*, 1810, B. executed a quitclaim deed for the same land, for the consideration of 300 dollars, to C., who knew, at the time, of the suit, trial and verdict, respecting the land. It was held, that the deed from B. to C. was void under the first section of the "act to prevent and punish champerty and maintenance." (Sess. 24. c. 87.) The purchase of land, during the *pendency of a suit* concerning it, if made with a knowledge of the suit, and not in consummation of a previous bargain, is *champerty*, though not punishable under the statute, for selling a *pretended title*.

NEW-YORK,
October, 1811.

JACKSON
v.
KETCHUM.

pursuant to the act, to the defendant *Ketchum*, dated the 30th *December*, 1808.

The defendants also produced evidence, which it is not necessary to detail, to show that the judgment in favour of *Cox*, against *Pearce*, which had been entered up by virtue of a warrant of attorney, and under which the premises were sold, had been fully satisfied, before the execution and sale under it; and one witness testified, that when the attachment was levied on the property of *Pearce*, *Cox* was present, and did not assert any claim under the judgment; but said that " he was sorry for *Pearce*, and had a mind to save the property for him, and that as he had not discharged the judgments he had obtained against *Pearce*, on record, he could have the property sold under them and save it for *Pearce*." This was, however, contradicted by *Cox*, who was sworn as a witness at the trial.

The judge charged the jury, that the plaintiff had made out a good paper title, in the first instance ; but if the jury believed that the judgment against *Pearce*, in favour of *Cox*, under which the premises had been sold, by the sheriff to *Cox*, had been satisfied, at the time of the issuing the execution, the defendants would be entitled to a verdict, otherwise they ought to find for the plaintiff. The jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial.

*Foot*, for the defendants. The deed from *Cox* to *Bryant* was void. It was the sale of the subject matter of the suit, then pending, and while the grantor's right was in litigation. The *English* statutes of *Westm.* 1. c. 25. *Westm.* 2. c. 49. and 28 *Edw.* I. c. 11. from which our act relative to maintenance has been extracted, were declaratory of the common law. They prohibit all persons from taking, or receiving, by gift or purchase, lands, &c. while a suit

is pending.* A lease for life, or years, or a voluntary gift of the subject matter, pending the suit, is as much within the statute, as a purchase for money. And it has been held that the purchase of land, *pendente lite*, was *champerty*, and, as such, within the statutes.† The only cases which are considered as exceptions, or not within the statute, are where the conveyance is made *bona fide*, for a valuable consideration, and without notice, or in pursuance of a previous contract.‡

*Russell*, contra, contended, that the deed was valid at common law, and not within the statute against champerty. A verdict in ejectment concludes nothing, except as to the *mesne* profits. The first section of our act applies only to the case of a purchase made with a view to defeat the very action pending. *Hawkins§* speaks of the purchase of doubtful titles, in order to aid a suit pending relative to such title; and he seems to think it makes no difference whether the party selling is in possession, or not. But the authorities‖ he cites, do not bear him out in that position; for in all of them the party selling was out of possession. The question here is, whether a person legally in possession of land, and having a legal title, cannot sell that land, merely because a person, without title, has thought proper to bring an action of ejectment against him. If this deed was valid at common law, it is not made void by the statute, which merely adds a penalty. The price for which the land sold does not affect the question as to the right to sell. *Blackstone*,¶ in treating of *maintenance* and *champerty*, takes no notice of this offence.

It is not pretended that *Bryant* made the purchase, with a view to interfere with the suit then pending between the defendant and *Cox*. The intent, as to the purchase, was a matter of fact for the jury to decide.

NEW-YORK, October, 1811.

JACKSON v. KETCHUM.

*Hawk. P. C.* b. 1 c 84 s 2 10. 13. 4 *Bac. Abr.* 494. tit. *Maintenance Co Litt.* 368. b. 369. a. † *Moore*, 655. ‡ *Hawk. P. C.* b. 1. c 84. s. 14. 2 *Inst* 563. *Fitz. Nat Brev.* 172. tit *Champ* pl 15. 2 *Roll. Abr.* 113.

§ *Hawk. P. C.* c. 86. s. 1.

‖ *Moore,* 751. *Hob.* 115. *Plowd.* 80.

¶ 4 *Black. Com.* 133, 134.

NEW-YORK,
October, 1811.

JACKSON
v.
KETCHUM.

* 4 Black. Com.
135.

There was, in fact, no intermeddling, on the part of the present lessor, with that suit. Must a person, who has an undoubted title to land, and which has been possessed by him and his ancestors, for a century, be prevented from selling it, because some person has brought an ejectment against him? It was once an offence in *England,* to sell or purchase a bond or other *chose in action;* but now it is the general practice, and has been sanctioned by our courts.

*Henry,* in reply, observed, that the inquiry was not whether the deed from *Cox* to the lessor was void, under the 8th section of the statute, which prohibits the buying of pretended titles; but whether it was not *champerty,* and within the first section of the statute. A person who purchases a thing, knowing it to be in suit, does it, either for the purpose of bringing a suit, or defending one, which is the very thing the statute means to prevent, the buying up rights of action. Suppose *Cox* had been turned out of possession, by the ejectment suit against him, he could not then have sold. Now, he does the same thing circuitously; and for the purpose of becoming a witness in the suit brought by his grantee. The *English* statute of 28 *Edw.* I. c. 11. called *articuli super chartas,* is general, extending to all persons, and to all actions real, personal, and mixed. It has been held that if a tenant, pending a suit, grant rent out of the land, it is champerty.† In equity, the parties cannot alter the state of the matter in controversy, pending the suit. The position laid down by *Hawkins,* is established by all the authorities; and the only exception is, where the sale is in pursuance of a previous contract, or to pay an honest debt. *Fitzherbert,* it is true, says, that a *bona fide* purchaser, without notice, is not within the statute. The *bona fides* must be decided by a jury, who must be satisfied that there is no *champerty,* or violation of the statute.

† 2 *Inst.* 533.

· *Per Curiam.* The principal question is, whether the deed from *Cox* to *Bryant* is not void. It was executed on the 14th *July*, 1810. It was a quitclaim deed; and for the consideration of 300 dollars, and it purported to convey lands worth 2,500 dollars. A verdict in eject-ment for the lands in question, had passed against *Cox*, at the circuit court, in *June*, preceding the sale, and *Bryant*, at the time of the purchase, knew of the trial and verdict.

Upon these facts, we consider the deed to be void, un-der the act *to prevent and punish champerty and mainte-nance.* (*Laws*, vol. 1. 343.) The first section declares, " that no officer or other person shall take upon him any business that is or may be in suit in any court, for to have part of the thing in plea or demand, and no person upon any such agreement shall give up his right to an-other, and every such conveyance or agreement shall be void." This provision contains the substance of the *English* statutes of *West.* 1. c. 25. *West.* 2. c. 49. and 28 *Edw.* I. c. 11. on this very point. The statute of *West.* 1. enacted that *no officer, &c. should maintain pleas, &c. hanging in the king's courts for lands, &c. for to have part or profit thereof, by covenant made,* &c. The statute of *West.* 2. extended also to the public officers of justice ; but the 28 *Edw.* I. enacted that *no officer nor any other, for to have part of the thing in plea, should take upon him the business that is in suit, nor upon any such covenant shall give up his right to another,* &c. Our statute is nearly *verbatim* with the last, which also embraced the substance of the other two, and it un-doubtedly never meant to weaken the force, or destroy the application of the decisions under those ancient sta-tutes, and which had become incorporated into the body of the common law. Our act has even a more explicit provision than these *English* statutes, when it declares, " that every such conveyance and agreement shall be void." The established doctrine, under these statutes, is,

that a purchase, or even a gift, of the land, while a suit is pending concerning it, if it be made with knowledge of the suit, and be not the consummation of a previous bargain, nor founded on the ties of blood, is within the purview of those statutes. (*Hawk.* b. 1. c. 84. tit. *Champerty.* 2 *Inst.* 563, 564.) It is, in the language of our statute, the " giving up his right to another," when that right is "in plea or demand." In *M.* 8 *Edw.* IV. 13. b. it was held by the justices, that a sale or gift of lands, pending the suit, was within the statutes, for the law prohibited every one from purchasing pending the suit. Even a *bona fide* purchase pending the suit, was held by all the serjeants, in 50 *Ass.* pl. 3. to be champerty ; for, by intendment of law, the purchaser must and would aid the suit, to save himself from loss. So strict was the ancient law on this subject. Though this point is sought to be questioned, so far as misdemeanor and punishment are involved, yet the policy of the law may well require that every such conveyance be adjudged void. In *Mowse* v. *Weaver and Postern,* (*Moore,* 655.) the same doctrine was held, that the purchase of land, during a *lis pendens,* was champerty, within the purview of those ancient statutes, though not punishable under the 32 *Hen.* VIII. made against selling pretended titles. There is, indeed, no case that holds such a purchase valid, except in particular instances, where there is no ground for the inference of champerty; as where a man delivered seisin, after suit brought, in consequence of a previous bargain. (*Fitz.* tit. *Champerty,* pl. 15.)

The present case is stronger than any to be met with in the books. It is too gross and palpable a violation of the statute, to uphold a doubt as to the *mala fides* of the transaction. The purchase and quitclaim, for less than one eighth of the value of the land, and after the knowledge of the verdict in ejectment against *Cox,* are

circumstances that mark this case, and render the conclusion of law upon the facts inevitable.

The verdict must, therefore, be set aside, and a new trial awarded, with costs, to abide the event of the suit.

NEW-YORK,
October, 1811.