Türley, J.
delivered thé opinion of the court.
íhis was an action of ejectment, in which the right of the plaintiff to recover depends upon the validity of a decree of R court of chancery foreclosing a mortgage under which he purchased, and which therefore forms a link in his title. To this decree two objections are taken, first, that it is void for uncertainty; and secondly, that it is void because at the time the bill was filed, and the decree rendered, the land was held adversely, and therefore a sale under it conveys no title, being made contrary to the provisions of the champerty act of 1821, c 66.
1st. Is the decree void for uncertainty? It is argued that it is, because the land is not sufficiently described. The Clerk and master reports, that in pursuance of the interlocutory decree he had exposed to sale the property mentioned in the mortgage deed, that the one hundred and fifty acres of land lying in Bedford county, on the north side of Duck river, was struck off to Wm. P. Sims, for five dollars. The report does not identify the land, but refers therefor to the *461 mortgage deed, which is a part of the records of the stiit, and ° ° 3 r _ _ which does describe the land with certainty. This is sufti-cient, because though the report be of itself not sufficiently certain in its description of the premises, yet it may be made so by an inspection of the deed of mortgage referred to.
2d. Is the sale under the decree void by the provisions of the act of 1821, c 66, because the land was held adversely at and before the time ic was made. The act provides, that £Cno person shall agree to buy or to bargain, or to sell any pretended right or title in lands, tenements, or any interest therein, and if any such agreement, bargain, sale, promise* covenant or grant be made, when the seller has not himself, or by his agent, or tenant, or his ancestors, been in actual possession of llio same, or of the reversion or remainder, of taken the rents or profits for one whole year next before the sale, such sale, bargain, promise, covenant, grant or agreement, shall be utterly void, and if any suit in law or equity shall be brought for the recovery of the lands or tenements, as bargained or contracted for, whether the agreement, sale, bargain, grant or promise be executed or executory, the court in which such suit may be depending, upon the facts being disclosed in the manner therein pointed out, shall forthwith dismiss such suit with costs. Provided that sales by execution be not prevented or impaired,, but continue as heretofore.”
That this statute avoids all contracts for the sale of lands* tenements, or hereditaments, made between, individuals, which at the time, of the contract were adversely held, is not disputed. But it is said that it is not applicable to the present case, because, 1st. It was not intended to apply to sales made under a decree or by the judgment of the court, because they are not liable to the abuse which was intended to be prevented. 2d. That this case falls within the spirit, if not the words of the proviso in favor of execution sales, and 3d. That the act does not apply to conveyances made in fulfilment of honest contracts entered into, where the adverse possession has accrued since the date of the contract.
1st. Does the statute apply to a sale made by virtue of the decree of a court? The reason assigned by Lord Coke, why *462 a r'§ht entry was not assignable at common law is, “that colour thereof, pretended titles might be granted to great men, whereby right might he trodden down and the weak oppressed.” Coke Lit. 214, a. The repeated statutes which were passed in England against champerty and maintenance arose from the embarrassments which attended the administration of justice in those turbulent times, from the dangerous influence and oppression of men in power. 4 Kent’s Com. 439. That these evils could only exist in cases of individual sales, is to our minds so self evident, that it appears difficult to make it plainer by illustration. At the time the statutes were passed, the titles to lands were not changed by executions or judgments of a court of law, and the idea of an equitable interest, *fo which the court of chancery by a decree might add the legal title, we apprehend had never been conceived of by a lawyer of England. Sales made by the judgment or decree of the court, then, could not have been intended to be embraced. And it is the after change of the powers and practice of the courts which has induced the argument, that the statutes of champerty must be made to apply to sales of real estate, made under their su-pervisement and control. The evils to be apprehended are not of sufficient importance to induce us to make such an application of these statutes; We can scarcely conceive of the possibility of a sale of lands being effectuated under the judgment or decree of a court, with a view of fraudulently escaping the operation of the statutes of champerty, in order to enable a powerful man to oppress his enemy or poor neigh-bour. It is vain to say that our statutes of 1821 was passed long after the time when the power had been given by legislative enactment, and assumed by which the titles to real estate, in a great variety of instances, were changed by the judgments and decrees of the courts, and that inasmuch as execution sales are excepted therefrom, that therefore the decrees of a court divesting title are not embraced; because we know the pertinacity with which the forms of English statutes have been adhered to in the United States, whenever they hatfe been re-enacted; and the case of Parks lessee vs. Larkin, reported in 1 Tennessee, 101, explains why, out of an *463 abundance of caution, execution sales are' provided for in the 1 " statutes. • •
• In this case it was decided by the superior court, consisting of judges Overton and Whyte, that execution sales were not embraced by the statutes against champerty; and it is almost a part of the legal history of the country, that one of the attorneys who in that case contended that such was the correct decision, drew the champerty7 act of 1821. It is obvious, that the fact, that the principle had been questioned was sufficient to have produced the proviso.
Entertaining the view of this proposition which we do upon principle, yet we are gratified to find that we are not without authorities expressly adjudicated by highly respectable tribunals on the point. In most states of the union the statutes against champerty have been re-enacted in substance as they were originally passed, and therefore the decisions of other states may be safely resorted to as a guide in expounding our own. In the case of Tuttle vs. Jackson, 6 Wend. Rep. 213, the question arose, and the chancellor who delivered the opinion, which was concurred in by7 fifteen senators to five, says at page 224, “I am satisfied the statute against buying and selling pretended titles cannot apply to judicial sales. The statutes, except as to the penalty, is merely an affirmance of the common law, and that never has been considered as preventing the change of property by operation of law or by a sale by the proper officer under a bona fide judgment, or a decree of a court, having a competent jurisdiction to order such sale. It does not come within the mis-chiefs intended to be guarded against by the statutes.”
In the case of Saunders’ heirs vs. Groves, 2 J. J. Marsh. Rep. 407, the court of appeals of the State of Kentucky says, “that a deed made under a decree of a competent court cannot be within the reason of the act against champerty, although another be in adverse possession.”
It will be remembered that in Kentucky, courts of chancery operate in personam and, not in rem, and that therefore where our courts of chancery vest title by decree, theirs compel a conveyance by deed, and the authoriry is directly in point.
*464 We have seen that in the case of Parks’ lessee vs. Larkin, 1 Tennessee Rep. 101, it was held by the superior court of the state, filled by two able jurists, that an execution sale was not void by the statute against champerty, and this was before there was any exception made in their favor, and therefore could only have been upon the ground, that they were not within the evils intended to be provided for. The same principle must of necessity apply to sales made in pursuance of the decree of the court of chancery. For these reasons and upon these authorities we cannot hesitate, especially when there is not a precedent to be found to the contrary, in saying that our act of 1821, c 66, does not vitiate a sale made under the decree of a court of chancery, although there is an adverse holding at the time of filing the bill and making the decree.
But if this were mt so, we have no hesitation in saying upon the second point, that a decree for the foreclosure of a mortgage is within the spirit of the proviso in favor of execution sales. A court of chancery always considers mortgaged property as a security only for the payment of a debt, and by virtue of its acknowledged powers decrees a sale for the payment thereof, without compelling the mortgagee to resort to common law courts for redress. It is then in substance nothing but selling property by operation of the law for the payment of debts, and what difference can it possibly make whether this be done by virtue of a fieri facias directed to the sheriff, or by the clerk and master under the decree of the chancellor?
This makes it unnecessary to determine the third point, but if it were, we are not without authority for saying, that that'is also for the plaintiff in error. In the case of Jackson vs. Ketchum, 8 John. Rep. 479, “It is held that the purchase of land during the pendency of a suit concerning it, if made with a knowledge of the suit, and not in consummation of a previous bargain is champerty,” ergo, it is not so if purchased in consummation of a previous bargain. In the case of Saunders’ heirs vs. Groves, befoie referred to, 2 J. J. Marsh. Rep. 417, it is said, “That the act does not apply to conveyances made in fulfilment of honest contracts entered *465 torn before the adverse possession.” In the case of Whitesides vs. Martin, 7 Yer. Rep. 398, the Sup'remé Court of the State of Tennessee, says, ‘‘That in the construction of the British acts of champerty, the settled doctrine is, that a contract to convey vests the equity in the bargainer, who has the right, not only to call for the legal title in fulfilment of the bargainer’s covenant, but the latter holding as trustee, 'cannot refuse his name to the purchaser tó rec'over the premises if need be.” There are cases where the equity attached previous to the adverse holding, and where a decree for the legal title is sought, much stronger than the case of a mortgage, in which the legal title has been pássed, land nothing is sought but to foreclose the equity of redemption.
There is then in our opinion manifest error in the judg-of the court below, which is therefore reversed, and the •cause remanded for a new trial.
Judgment reversed.