Masten, J.
—The judgment in the action of ejectment, brought by Steele against Bennett, is not evidence in this action of the validity of Steele’s title to the premises in question. (1.) The parties to this action are not parties nor privies to that judgment. (2.) The judgment is not upon verdict (2 Rev. Stat., 209, § 36 ; Ryers v. Rippey, 25 Wend., 431; 4 Hill, 468; Christie v. Bloomingdale, 18 How. Pr., 12 ; Bay v. Gage, 36 Barb., 447 ; Kimberly v. Patchin; Dutchess of Kingston, 2 Smith L. Cas., 424).
It was sought upon the argument, to give an extraneous effect to the judgment in Steele v. Bennett, by force of the plaintiffs’ covenant in the deed to Savage, and of the notice to the plaintiff to defend that action. It is well settled that, where one, by the nature of his covenant, is bound, upon the request of the covenantee, to defend an action brought by a third person against the covenantee, in respect to the subject of the covenant, that the covenantee may throw upon the covenantor the burden and *448 risk of the litigation, "by giving to him proper notice and opportunity to defend the suit. The burden and risk of the litigation having been thus cast upon the covenantor, the result, if adverse to and binding upon the covenantee as res adjudícala, is conclusive evidence, in an action by the covenantee against the covenantor upon the covenant, of its breach (Thomas v. Hubbell, 15 N. Y., 405).
I do not understand the rule to extend any further. It does not rest upon the ground that the covenantor becomes a party or privy to the original action, in the sense in which those terms are used when speaking of the conclusiveness of judgments as res adjudicata; for such is not the case, but it rests solely upon the force of the covenant.
Is the tax bill relied upon by the defendants a valid one ? The tax sale was for the unpaid taxes for the years 1837 and 1840. The tax of 1837 returned unpaid was upon a piece of land forty-two feet front by seventy feet deep. >The tax of 1840 returned unpaid was upon forty feet front by seventy feet deep, parcel of the land liable for the tax of 1837. The comptroller sold the forty-two feet by seventy feet for a single and entire sum, made up of the said taxes of 1837 and 1840, and interest and expenses. By the statute “whenever any tax on lands returned to the comptroller, and the interest thereon shall remain unpaid for,” &c., the comptroller is to proceed to advertise and sell such lands at public auction. On the day mentioned in the notice he is to commence the sale of such lands, and continue the same from day to day until so much of each parcel assessed shall be sold, as will be sufficient to pay the taxes, interest and charges thereon (1 Rev. Stat., 409).
By the statute, as I read it, the comptroller is to put up for sale each parcel of the land assessed for the amount of the taxes, interest and charges upon it, and to strike off to the bidder who offers to take the' smallest portion of the parcel and pay such amount, the portion so offered to be taken. By the course pursued in this case, the forty-two feet front by seventy feet deep not *449 chargeable with the tax of 1840 were sold for it. And the forty feet by seventy feet were sold for the tax which was chargeable upon it and other lands.
This, I think, was erroneous. By reference to the provisions in the same article of the statute, it will be seen that this is material as affecting the amount to be paid upon redemption. To redeem the whole of the lands sold, the purchase money and interest are to be paid.
To redeem any specific part of the lands sold, such proportion of the purchase money and interest is to be paid as the quantity sought to be redeemed bears to the whole quantity sold. In the case under consideration, the whole forty-two feet by seventy feet were sold. To redeem the two feet by seventy feet, there would have to be paid two forty-two parts of the tax of 1840, and the interest, &c., and which were not chargeable upon them.
I am also of the opinion that the tax title was never completed so as to make the comptroller’s deed absolute.
The statute provides that if any land sold and conveyed by the comptroller be in the actual occupancy of any person, the grantee shall serve written notice on “the person occupying such land.” The statute also speaks of the person entitled to notice as “the occupant.”
The lands in question were and are covered with a building, in the principal story of which are stores ; the residue is designed for a hotel. The building was chiefly occupied by Bennett as a hotel. One of the stores was occupied by Jenning & Churchill as a tailor and shoe shop. They were in it under a lease. They were tenants in the actual and open possession of it, and carrying on their business in it. Boarders, lodgers and servants- in a hotel are not, in my opinion, occupants within the meaning of the statute, upon whom notice is to be served. But if a tenant in actual possession of a portion of the lands is not a “person occupying,” an “occupant,” who is?
The object of the statute is to bring home notice to those whose duty or interest it is to redeem the lands *450 from the tax sale. If the person whose interest or duty it is to redeem is not “anoccupant,” as it was in the case before us, the chances that the notice will get home to-him when served upon all the “ occupants,” are greater than if served only upon some of them.
I am of the opinion that the defense based upon the tax title failed.
Is the Burwell title an outstanding one %
Burwell, at the time when the plaintiffs commenced the action to foreclose the mortgage of McKay to Oakley, and which had been assigned to them, was the owner in fee of the lands in question, and which were embraced in that mortgage.
He was not a party to that suit. At the time of the commencement of that suit he did not occupy the lands, and his deed was not recorded. There was no question of fraud raised on the trial.
It is probable that he was not made a party to that suit, from ignorance, on the part of the plaintiffs or their attorney, of his interest in the premises, and from neglect to make proper inquiry.
By the provisions of the statute then in force, in relation to the filing of notices of the pendency of actions, the notice filed did not affect Burwell’s rights.
At that time it was only necessary by force of the recording act to have one’s deed recorded, and the consequence of neglecting to have it recorded is declared in the act, and is that the deed shall be void as against a subsequent purchaser in good faith, and for a valuable consideration, whose deed shall be first recorded.
If the master’s deed to the plaintiff had been recorded before the deed to Burwell was recorded, the case possibly might be within the recording act. But such was not the case, for Burwell’s deed was recorded before the judgment even was rendered in the action.
The foreclosure was radically defective ; because the owner of the fee was not a party to the action. The relative rights of the plaintiff and of Burwell were not changed by the judgment and sale. Burwell remained *451 the owner of the land in fee, and the plaintiff mortgagee (Watson v. Spence, 20 Wend., 260; Hall v. Nelson, 23 Barb., 99 ; Sahlen v. Signer, 37 Id., 329 ; Gage v. Brewster, 31 N. Y., 218).
Is Burwell’s title lost by adverse possession and lapse of time? It is clear to my mind that section 52 of title 2, of chapter 4, of part 3, of the Revised Statutes,— requiring certain actions to be brought within ten years,— has no application to this ease.
When .the owner of the fee has been foreclosed by judicial proceedings, the remedy of an incumbrancer junior to the mortgage, who was not a party to the action or proceeding, and who has not been cut off, is possibly by action to redeem ; which action must be brought within the time specified in the said 52nd section (Calkins v. Calkins, 3 Barb., 305; Cleveland v. Boerum, 24 N. Y., 613).
But the remedy of the owner of the fee is not confined to a bill in equity to redeem. He has a concurrent remedy at law ; he may tender the amount due upon the mortgage, and bring ejectment at any time before twenty years’ adverse possession has run against him (Kortright v. Cady, 21 N. Y., 343).
To repeat what I have already in substance said, the plaintiffs are not and never have been the owners in fee of the lands in question: their only interest in them is that of mortgagee.
The fee of the premises at the commencement of this action was in Burwell, and at the time of trial in the defendant McKay, by grant from Burwell. The plaintiffs by force of their mortgage interest in the lands, cannot maintain ejectment against the defendant, who is in fact the owner in fee of them, unless the defendant is estopped from showing the true state of the title (2 Rev. Stat., 312, §57).
Upon the trial it was ruled that ‘ ‘ the defendant was not in a position to set up the Burwell title, and that the proof of that title did not establish a defense to the action.”
To which ruling the defendant excepted.
*452 Formerly the doctrine of estoppel was carried in certain cases by the supreme court of this State to an erroneous extent.
Those cases were considered by the court of appeals in Sparrow v. Kingman (1 N. Y. [1 Comst.], 242), and overruled.
It is well settled that a grantee is not estopped from denying the title of his grantor, and that a grantor without warranty is not estopped frbm denying the title of his grantee (Sparrow v. Kingman, supra ; Averill Wilson, 4 Barb., 180; Kenada v. Gardner, 3 Id., 589).
A conveyance without warranty is simply a release or quit-claim, and passes only the interest which the grantor or releasor had at the time.
In Colee upon Littleton it is laid down, “If there be father and son, and the father be disseized, and the son (living his father), releaseth by his deed to the disseizor all the right which he hath or may have in the same tenements without clause of warranty, &c., and after the father dieth, &c., the son may lawfully enter upon the possession of the disseizor; for that he had no right in the land in his father’s life, but the right descended to him, after the release made by the death of his father.” “If there be warranty annexed to the release, then the son shall be barred. For albeit the release cannot bar the right for the cause aforesaid, yet the warranty may rebut and bar him and his heirs of a future right which was not in him at that time ; and the reason (which in all cases is to be sought out) wherefor a warranty, being a covenant real, should bar a future right, is for avoiding of circuity of action, which is not favored in law” (Coke, 265, b).
By the-ancient "common law of England a mortgage was a conveyance of the lands upon a condition subsequent ; by it the estate and possession of the mortgagor vested, upon the delivery of the mortgage, in the mortgagee, subject to,be defeated by a strict performance of the condition..
*453 If the condition, was not strictly performed, the grant was divested of the condition, and became absolute.
After forfeiture, the mortgagee held adversely to the mortgagor as if he had been an absolute grantee in the first instance. Upon the principles above stated, he was not estopped from denying the title of the mortgagor. ,
The elementary writers on the law of mortgages say that “accepting a mortgage does not estop the mortgagee from saying that the mortgagor had no estate in the mortgaged premises” (Powell on Mortgages, 232 ; Coote, 345).
This proposition is established in Cameron v. Irwin (5 Hill, 272, 280).
The English elementary writers also say, that “a mortgagor is never permitted to dispute all the title of his mortgagee, because no man is permitted to dispute This own solemn deed ” (Powell, 221; Coote, 335. They cite Groodtitle v. Bailey, 2 Cowp., 601). In Groodtitle v. Bailey, the instrument was a release with covenant for title. ,
That the reason assigned by these elementary writers does not support the broad proposition that ‘ a mortgagor is never permitted to dispute the title of his mortgagee,” has already "been shown. If the mortgage deed contains a covenant for title, either express, or implied from the technical word importing a covenant, or any assertion or allegation respecting the title possessed by the mortgagor at the time of the making of the deed, he is es-topped by them.
By the common law, at one period of his mortgage the mortgagor might have been estopped while in 'possession, upon the ground that he was a quasi tenant of the mortgagee. But under the law of this State he sustains no such relation to the mortgagee. The mortgagor is not divested by the mortgage of his title or estate in the mortgaged lands, but remains the owner of them.
The mortgage merely creates a lien upon the interest ■ of the mortgagor in the lands, which may be enforced by legal proceedings, which may terminate in divesting him *454 of the estate mortgaged, and vesting it in some other person.
Until foreclosure, the mortgagee has at most a chose in action, and a lien or charge.
Before default in the payment of the money secured by the mortgage, the lien of the mortgage does not carry with it to the mortgagee the right to the possession of the mortgaged property. He cannot before foreclosure recover by action the possession of the premises from the mortgagor (3 Rev. Stat., 312, § 57).
But if, after default, he can get peaceably into the possession of the mortgaged premises, he can with his mortgage defend his possession as against, the mortgagor and those claiming under him.
The last proposition was questioned in Fort v. Burch (6 Barb., 76). It is in seeming conflict with the spirit of the statute. But I consider it to be settled law.
Barber v. Harris (15 Wend., 615) was ejectment by the purchaser at a foreclosure sale under a mortgage. The court ruled that the mortgagor was estopped from denying he had title to the lands, and from setting up title in third persons, and yet the plaintiff was not allowed to recover the whole premises embraced in the mortgage. The point does not appear to have been much considered. The case, I think, is in the class overruled by the cases above cited.
I am of the opinion that a mortgage without covenant ■ or representation creates a lien only upon the interest which the mortgagor had in the lands at the time of the making of the mortgage, and that the mortgagor may show what that interest was ; and" that a subsequently acquired title does not inure to the benefit of the mortgagee.
A father has the fee of certain lands in which his son has an estate for years; the son, during the life of the father, mortgages the lands without warranty,' and after the expiration of the term of years the father dies, leaving the son his sole heir ; is the estate which descended from *455 the father to the son bound by the mortgage ? Is the son estopped ?
If the son, after having made such mortgage, had conveyed the lands by deed with warranty, would the estate, subsequently descending from the father to the son, ■ and which by force of the covenant would inure to the benefit of his grantee, be incumbered by the mortgage?
If, before the expiration of the estate for years, and before the death of the father the mortgage had been foreclosed by judgment and sale, would the estate, which upon the subsequent death of the father descended to the son, inure to the benefit of the purchaser ? and would the son be estopped ? I think not (2 Rev. Stat., 191, § 158; Packer v. Rochester & S. R. R. Co., 17 N. Y., 283).
If the father died before the expiration of the term of years the mortgage probably would prevent a merger of the term of years. But it, is said that even if it be true as a general proposition that one who is in possession of lands and mortgages them without warranty is not estopped to show the true state of the title, yet the mortgage in this case having been given to secure the purchase money takes the cas'e out of the rule.
It is said that the mortgagor received the possession of the lands from the plaintiffs, under an obligation to surrender it back to the plaintiffs if default should be made in the payment of the purchase money. If this be so, then the defendant is estopped from denying the plaintiffs’ title until he restores the possession to them.
Being now in possession, if he owed that allegiance to the plaintiffs he owes it still. His eviction by Steele, and his subsequent entry under Steele, did not destroy his allegiance to the plaintiffs, because the eviction was not by title paramount to the plaintiffs’ title.
It is a general rule that when one person enters into the possession of lands under an executory contract for the purchase of them from another, he will not be permitted to set up a hostile title to retain the possession, until he has first surrendered it up to him from whom he *456 received it. In such case the title of the land remains in the vendor, and the vendee takes the possession to hold it for the vendor. The vendor and vendee are in equity trustees for each other respectively. But in the case of an executed grant in fee the grantee holds the lands as his own, and adversely to the grantor, and the fact that he received the possession from the grantor with the deed does not change the character of his holding.
A mortgagor does not undertake to give up the possession of the mortgaged premises, upon default of the payment of the money, and is under no obligation to do so by the law of this State. If any such obligation existed the law would enforce it.
“ A mortgagee has neither jus in re nor jus ad rem, but a mere security” (Gardner v. Heartt, 3 Den., 232; Packer v. Rochester & S. R. R. Co., supra).
That is, he has no right of property in the land, or right to its possession, but only a charge upon it.
It was said that the deed and mortgage must be read together as one instrument. For some purposes that is undoubtedly so.
But by reading them together their whole character and office cannot be changed. They cannot, thus, be construed to be an executory contract of purchase and sale, or to be a conditional sale, but their distinctivé characters must be preserved.
It was also said that “ the foreclosure of a mortgage for the purchase money cannot be resisted on the ground of defect or failure of the title.” That depends upon whether such defect or failure constitutes an answer to the debt secured by the mortgage.
The proposition stated by the counsel is true, when the land was conveyed to the mortgagor without warranty, even if he has been evicted by paramount title. It is also true if the land was conveyed to him with warranty, and he has not been disturbed in his possession. Because in neither case does the defect or failure of title give a right of action against the grantor, nor discharge the mortgagor, or entitle him to relief in equity from the payment *457 of the debt secured by the mortgage. Besides, in an action to foreclose a mortgage the title of the lands cannot be tried. The object of the action is to change the lien into the ownership—^"us in re—of that estate or right in the land bound by the mortgage.
If the mortgagor had no estate or interest in the land at the time of the making of the mortgage, and has not acquired any since, which by force of some covenant, &c. is brought in under the mortgage, the mortgagee or the purchaser under his judgment would acquire nothing.
If the title be in dispute, or if the land be held adversely, the foreclosure and sale puts the purchaser in position to try title. “ It would be unjust as a general rule to involve the mortgagee in a dispute about the title in a proceeding which only gives him the right to try the title in another action (Hersey v. Tarbett, 27 Pa., 418).
Savage entered under the deed from the plaintiffs. The mortgage by Savage to secure the purchase money contained no covenant, and did not, as has been shown, transfer the title or the right of possession of the land to the plaintiffs.
I think my brother erred in ruling that the defendant was not in a position to set up the Burwell title, and that that title did not constitute a defense.
Prior to 1830, the Burwell title would have constituted no defense to the' action. It is not a title paramount to the mortgage of McKay to Oakley, but subject to the lien of that mortgage. It is • what is commonly called an equity of redemption from that mortgage.
Before 1830, the mortgagee, after default in the pay. ment of the money secured by the mortgage, and before foreclosure, could in an action of ejectment recover possession of the mortgaged premises, in order to render the mortgage available to the payment of his debts.
By the Revised Statutes of 1830, it is enacted that “no action of ejectment shall hereafter be maintained by a mortgagee or his assigns or representatives for the recovery of the mortgaged premises” (2 Rev. Stat., 312, § 57).
*458 The plaintiffs read in evidence the enrolled decree, &c., in the action to foreclose the mortgage of McKay to Oakley; and the object of the defendant in putting in evidence the Bunveil title was to show that that foreclosure was a nullity, that the plaintiff was only a mortgagee, and consequently could not maintain this action.
I am of the opinion that the only interest the plaintiff has in the lands in question is that of mortgagee; that the defendant is not estopped from showing that fact, and that as mortgagee the plaintiffs cannot, under our statute, maintain an action of ejectment.
There must be a new trial.
Clinton and Vebplank, JJ., concurred.