# Hersey *versus* Turbett.

The general rule is, that where a person obtains the possession of land under a contract with another for the purchase of it, he will not be permitted to set up an independent title to protect a hostile possession. He must pay the purchase-money or restore the possession.

Hence to a *scire facias* upon a mortgage given to secure the payment of the purchase-money, due on the mortgaged premises, the mortgagor cannot set up a want of title as a defence.

But when the parties at the time of the execution of the mortgage agreed that the money should not be paid until a certain specified claim should be decided and settled, the rule would be different.

Where the legal title to land is held by one, to secure certain claims, and the holder of one of the claims obtains judgment for the amount against the equitable owners, and sells the land, the purchaser will only take the equitable title of the defendant, unless the holder of the legal title was instrumental in making the sale, or his assent to it appears of record.

Where a party purchases at sheriff's sale, pending an action of ejectment for the premises, in which the persons whose title he purchases are parties, he is affected with notice of it, and bound by the decree in the case as much as if he was an actual party to it.

ERROR to the Common Pleas of *Fayette county*.

[Hersey v. Turbett.]

This was a *scire facias* on a mortgage given on the 22d January, 1851, by Ira Hersey to James Turbett. Thomas Foster in 1842 was the owner of the premises covered by the mortgage, and they were known as The New Haven Woollen Factory. He became embarrassed, and his property was levied, and being offered for sale by the sheriff, Samuel Blocher, Isaac Shoemaker, and John R. Taylor, certain creditors and sureties of Foster, agreed to become the purchasers at the sheriff's sale, and stipulated to pay $30,000, and that the title should be made to James Veech, Esq., in trust for them, and to be held as security for the payment of the amount stipulated. The sheriff's deed was accordingly made to Veech, and he continued to hold the title as security for the payment of the amount stipulated by Blocher and others. They paid a part of the sum agreed, but failing in paying the other portion, Mr. Veech instituted an action of ejectment against them, to December Term, 1843. On the 26th June, 1844, the defendants in open court confessed judgment, and on the trial list were added by the judge "for conditions, see paper filed." That paper was not among the records, and what the conditions contained in it were, does not appear. When this record was offered in the court below the court rejected it, because the paper which was to be the judgment was not filed. Veech afterwards conveyed the title to James Paull, who paid or assumed the balance of the liabilities for which the property was held in trust, and he was put into possession by a *hab. fac.* issued upon the judgment. After the sheriff's sale to Veech, Blocher & Co., while in possession, gave Chauncey Brooks a bond, with warrant of attorney, to confess judgment for $430.29, and a similar one to Nathaniel Ewing, for $323.83, being claims which they had held against Thomas Foster, and to secure which the title was held in trust by Veech. Judgment was entered against Blocher & Co., on these claims, and Ewing's judgment was assigned to Howell, who caused an execution to be issued to June Term, 1846, under which the interests of the defendants in the premises in dispute were seized and sold to E. P. Oliphant, Esq., for the sum of $4990, and he afterwards conveyed to Turbett, the legal plaintiff in this suit.

To March Term, 1847, Samuel Blocher, Isaac Shoemaker, and John R. Taylor brought an ejectment for the premises against James Paull and Andrew Gillis, which was tried, and on the 30th September, 1847, a verdict was rendered in favour of the plaintiffs, subject to the payment of $8500 to Paull, within thirty-six months, with interest and costs; Paull to file a deed, conveying his title to the property, and on failure to comply with the conditions of the verdict, judgment to be entered for the defendants. On the 22d October, 1847, a deed from James Paull and wife to the plaintiffs was filed, and on the 4th October, 1850, the money not

having been paid, leave was given to withdraw the deed, and judgment was entered on the verdict in favour of the defendants.

On the 22d January, 1851, Turbett conveyed his title, derived through the sheriff's sale, to Oliphant, and Oliphant's deed to him, to Ira Hersey, and to secure the balance of the purchase-money, took from Hersey the mortgage, upon which this action is brought. The deed from Turbett to Hersey was accompanied with a covenant of general warranty, executed by Alfred Patterson, Esq., who, it was admitted, was the owner of the title thus conveyed. The mortgage, and bond accompanying, were, on the day of their date, assigned by Turbett to Patterson, and afterwards, on the 20th September, 1854, assigned by him to John Blocher, for whose use this *scire facias* issued. James. Paull being the holder of the legal title at this time, it was agreed that the amount of this mortgage, though on its face payable in two years, should not be recoverable until Paull's claim to the premises should be extinguished.

Hersey, a few days after the conveyance to him by Turbett, conveyed the same to the Fayette Manufacturing Company. A judgment was obtained against this company, and the premises levied on, and sold by the sheriff to Manfred Eldred, for $6000, and a sheriff's deed to him, dated 9th March, 1853. On the 24th January, 1854, he conveyed to Harvey E. Jones—and Jones, on the 28th of the same month, conveyed to Anthony Hill, the terre tenant in this suit.

On the 21st November, 1851, James Paull conveyed his right and interest in the premises to Gaddis and Townsley, who, being citizens of the state of Ohio, instituted an action of ejectment in the Circuit Court of the United States, against the Fayette Manufacturing Company, to May Term, 1852. This suit was tried in November, 1853. At the trial Alfred Patterson appeared, and took an active part in the defence, and interposed the facts and circumstances hereinbefore stated, as an equitable defence, but they were rejected by the court, and a verdict passed for the plaintiffs, but judgment was suspended to give the defendants time to file a bill in equity. This not being done, on the 2d January, 1854, judgment was entered on the verdict. Gaddis and Townsley then, on the 3d May, 1854, conveyed to Anthony Hill, in consideration of $14,000, $2700 of which had been paid, and a mortgage given on the premises to secure the balance.

The defendant presented the following point:—

" If the jury believe, from the evidence, that Alfred Patterson, Esq., was notified and required by the defendants in the ejectment in the Circuit Court of the United States, or by M. Eldred, who then held defendant's title to appear and defend said suit, as the warrantor of the title, and that in pursuance thereof, and of his warranty, the said Patterson *did* attend and defend said suit, the

[Hersey v. Turbett.]

verdict and judgment therein, and the subsequent eviction of the defendant Hill under it, are conclusive against the plaintiff's right to recover in this action."

The court below (GILMORE, P. J.), after reciting the facts, charged the jury as follows:—

"When Patterson warranted the title, the claim of Paull was known; and if there had been no eviction, it is clear and well settled, that for any breach, the party must resort to his warranty. Here, however, we have a recovery in the United States Circuit Court. Patterson, the warrantor, was present and defended the title, and this we considered equal to his default of appearance, after notice and requirement to defend, because Mr. Patterson was a counsellor-at-law of that court, and might have appeared in that capacity: seemingly, his identity as warrantor of the title will not thereby be lost.

"As to the eviction, although no *hab. fac. pos.* issued on the record and judgment in the United States Court, we nevertheless think that the purchase of Hill from Gaddis and wife *et al.*, and possession, is tantamount to an actual eviction.

"If this were all that was in the case, surely the plaintiff would not be entitled to recover. But we think that, inasmuch as the defendant in the Circuit Court of the United States was not permitted to show his title, and because Hill has purchased Paull's title, and is now in possession under it, and interposes it here to the plaintiff's recovery, that the plaintiff may now show that his title is good. The objection to this is, that Paull is not vouched, and not heard in this action, and that he will not be concluded by this trial; and that, therefore, plaintiff should have resorted to this action of ejectment, in which Paull could have been notified and required to appear and defend; after which, if the action had resulted against the defendant, Paull would have been bound by the judgment. We are, however, not disposed to believe, under the circumstances, that this sincerity of action is necessary; nor will the testimony of Turbett and Rutherford, that this mortgage was not to be collected until Paull's claim was settled, make any difference.

"Paull's title has been brought forward here on this trial, and they are virtually face to face, as much so as they could be in an action of ejectment.

"This, then, will permit us to consider a point made by the plaintiff, which, if found correct, will dispose of this whole controversy.

"It seems that the judgment on which this property was sold, was obtained on one of the bonds which was given to secure certain liabilities of Judge Ewing for Thomas Foster, and which it is not denied that the trust estate in Veech was given in part to make safe. On this judgment (Nathaniel Ewing v. Samuel

Blocher, Isaac Shoemaker, and Joseph R. Taylor, No. 283, March Term, 1843), this property was sold on the 7th day of June, 1847, to E. P. Oliphant, for $4990, which sale now constitutes the plaintiff's title. Now, it is contended that this sale conferred a perfect title upon the purchaser, and discharged the title in the hands of Veech from the remaining trusts.

"This, we think, is correct. The title was held, something in the nature of a mortgage to secure certain liabilities; it is sold on one of these, and notwithstanding this was assigned, we think the trust estate is thereby destroyed. If this bond had been signed by Overholt, then it might be said that, as to this, the trust had been executed, and the sale under it would have no other effect than the sale under any other judgment; but this was not done: and the money arising from the sale should have been distributed amongst the claims intended to be secured by it.

"We are, therefore, of opinion that the plaintiff is entitled to recover."

The court answered defendant's point:—

"We have already said, at another stage of the case, that the defendant might be considered as evicted from the possession. We further charge you, that Patterson's being present, and engaged in the defence of the case, was tantamount to his presence after notice or requisition to defend the title: and if you believe that he was notified and required to defend the suit, it is still not conclusive against him, inasmuch as he was not permitted to prove his title. For this reason, and others already stated, we answer this point in the negative."

The jury returned a verdict in favour of the plaintiff for $13,141.66, and judgment was entered thereon.

The defendant sued out this writ, and assigned for error the rejection of the record of the ejectment Veech *v.* Blocher *et al.*; the answer to defendant's point, and the instructions to the jury, contained in the general charge.

*J. K. Ewing*, for plaintiff in error.—The court erred in permitting the question of title to be made at all. The defendant having been evicted under the judgment in the Circuit Court, and that the warrantor had been vouched, this was conclusive against the plaintiff's right to recover: Paul *v.* Witman, 3 *W. & S.* 407; Wolbert *v.* Lucas, 10 *Barr* 74; Lighty *v.* Shorb, 3 *P. R.* 447; Culp *v.* Fisher, 1 *Watts* 502; Christy *v.* Reynolds, 261.

The reason assigned—that the plaintiff had not been permitted to give his title in evidence in the Circuit Court—is destitute of even plausibility. Under the order, they could have applied for relief to the equity side of the court, which they failed to do. The record of the ejectments should have been received. They

[Hersey v. Turbett.]

operated under the Act of 21st April, 1846, as an absolute re-
scission of the contract between the parties: Seitzinger v. Ridg-
way, 9 *Watts* 196.

It is only where the vendor institutes an action founded upon
the contract of sale, and in affirmance of it obtains a judgment
for the purchase-money, under which he sells the land, that he is
considered as selling the whole estate, which he agreed to convey
to the defendant: Love v. Jones, 4 *Watts* 471; Horbach v. Riley,
7 *Barr* 83; Vierheller's Appeal, 12 *Harris* 108; Day v. Lowry,
5 *Watts* 414.

*Patterson*, for defendant in error.—The paper set up was no
warranty. It was intended only as indemnity against the claim
of Paull till the suit should be decided. But if it were a warranty,
this recovery in the Circuit Court should not be deemed conclusive,
unless positively proved that the warrantor was regularly vouched:
3 *W. & S.* 409. A knowledge of the action and notice of the
trial, unless expressly required to defend the title, is insufficient.
But if Patterson had notice to defend, the recovery would not be
conclusive. The defence was an equitable one, and under the law,
as administered in that court, could not be received or interposed
against a legal title. It was therefore not passed upon, or decided
by the court.

But if there was a warranty, there was no breach—because no
eviction: Clark v. McAnulty, 3 *S. & R.* 364; Paul v. Witman, 3
*W. & S.* 410; 3 *P. R.* 430; 2 *J. R.* 4; 3 *Id.* 471.

This left the plaintiff the right to show a good title, and we
contend he did this on the trial. Veech says that he never claimed
title but as trustee, to secure the debts, as agreed upon. For one
of those debts the premises were sold. The title held by Veech
was in the nature of a mortgage: Hewitt v. Huling, 1 *Jones* 30;
Hiester v. Madeira, 3 *W. & S.* 284. Where several bonds are
secured by a mortgage, a sale upon one of them discharges the
whole: Darley v. Hays, 17 *S. & R.* 400; Cronister v. Weise,
8 *Watts* 215; Pierce v. Potter, 7 *Id.* 475; Berger v. Heister, 6
*Wh.* 210; Mohler's Appeal, 5 *Barr* 418. The matter has been
virtually decided on this title: Paull v. Oliphant, 2 *Harris* 342.

The Act of 21st April, 1846, could have no effect upon the
matter. That act only applies between vendor and vendee; this
is between trustee and *cestui que trust.* Brown v. Nickle,
6 *Barr* 390.

It is suggested in the argument, that the verdict and judgment
in the case of Blocher et al. v. Paull, in 1847, is conclusive under
the Act of 1846. The case does not come under the act, and
therefore it cannot have any effect upon this. But it is said, that
suit and the judgment in the Circuit Court, being two verdicts and
judgments the same way, are conclusive of the right. To have

[*Hersey v.* Turbett.]

that effect it must be between the same parties, and upon the same titles. Both these requisites are wanting in these cases.

· The court were bound to admit the evidence of title, and submit the question of notice to the warrantor to the jury: Collingwood *v.* Irwin, 3 *W.* 310; *Rawle on Cov. for Tit.* 246, note 2; *Id.* 248; 250 note 2; Davis *v.* Wilbourne, 1 *Hill* 29; Middleton *v.* Thompson, 1 *Spear* 73; Hewitt *v.* Huling, 1 *Jones* 30.

The opinion of the court was delivered by

LEWIS, C. J.—This was a *scire facias* on a mortgage given to James Turbett to secure the purchase-money for a tract of land conveyed by Turbett to Ira Hersey. The defence rests upon a defect in the title to the premises, which will be noticed hereafter. The general rule is, that wherever a defendant enters into possession of land under a contract with the plaintiff for the purchase of it, he will not be permitted to set up an independent title to protect a hostile possession. He must either pay the purchase-money or restore the possession to the person from whom he received it. If the title of the vendor be defective, he may rescind the contract, but he must restore the possession of the land: Congregation *v.* Miles, 4 *Watts* 146; Nerpooth *v.* Althouse, 8 *Watts* 427. Even if he has been induced to enter into the contract by the fraud of the plaintiff, "the defendant is bound to show that he has disaffirmed the contract without having received any benefit from it." This was the language of Lord CAMPBELL, in delivering the opinion of the Court of Queen's Bench, on the 6th of June last, in the case of The Deposit and General Life Insurance Company *v.* Ayscough, 2 *Jurist, New Series,* p. 812. This principle applies with peculiar force in an action in which the plaintiff makes no personal demand upon the defendant, but merely asks, in default of payment of the consideration-money, the restoration of the property conveyed. A *scire facias* on a mortgage is an action of this character. It makes no personal demand on the mortgagor. He is not even liable for the costs of the suit. The judgment is *de terris*. It is to be levied exclusively on the mortgaged premises, and the sale conveys "no further term or estate to the purchaser than the lands shall appear to be mortgaged for." See Act of 1705, §. 8, 1 *Sm.* 61. If neither vendor nor vendee had any title at the time of the mortgage, the latter could by no possibility pledge any title to the mortgagee. It is true that equitable circumstances might exist which would call for the application of the principle, that a title subsequently acquired by a vendor enures to the benefit of the vendee. This principle might apply in the case of a loan of money obtained on the faith of a representation that the mortgagor had an indefeasible estate in the premises granted in mortgage as a security for the money. But it can have no place where the mortgage is given merely as security

[Hersey *v.* Turbett.]

for the purchase-money to be paid for the premises mortgaged. The purchaser at the sheriff's sale under such a mortgage gets no better or other estate than the mortgagor had in the premises at the execution of the mortgage. It would therefore be unjust, as a general rule, to involve the mortgagee in a dispute about the title, in a proceeding which only gives him, or the purchaser under his judgment, a right to try the title in a subsequent action for the land. But special circumstances may sometimes exist to justify this course: Poyntel *v.* Spencer, 6 *Barr* 254. And, in this case, the parties, by their agreements at the time of the execution of the mortgage, seem to have placed themselves in that predicament in regard to the title or encumbrance claimed by James Paull. It appears from the evidence that at that time a portion of the purchase-money was paid in hand, and a sum of money was left in the hands of the mortgagor to indemnify him against the claim of James Paull, under a special agreement that it was not to be paid until the claim of Mr. Paull, then stated to amount to $8000, more or less, was decided. If Paull recovered, he, and not the present plaintiff, was to receive the money. It further appears that Mr. Patterson was the owner of the title conveyed by Turbett to Hersey and mortgaged by the latter to the former, and that Mr. Patterson executed a covenant of warranty, the nature and extent of which we cannot speak of, as it is neither annexed to the bill of exceptions nor copied into the paper-book. Under these circumstances, however, the plaintiff below seems to have bound himself to meet the title of Paull in this suit.

The premises belonged at one time to Thomas Foster. They were sold at sheriff's sale, as Foster's property, to James Veech, Esq., and he received the sheriff's deed sometime before the 2d December, 1842. But this deed is not furnished to us in the paper-book, although all parties claim title under it. This title was purchased by Mr. Veech under some agreement with certain creditors of Foster, by which Mr. Veech was to hold it in trust for their benefit. There is also evidence that Samuel Blocher, Isaac Shoemaker, and Joseph R. Taylor, with others who were subsequently left out of the arrangement, agreed to purchase the property from Mr. Veech, and to secure those creditors of Foster for whose benefit the purchase was made, to the amount of $30,000. There is a conflict in the testimony on the questions whether the Bowie debt was to be included among the claims to be paid, and whether the contract was afterwards carried into execution by performance and delivery of the deed to the vendees.

On the 26th January, 1843, Nathaniel Ewing obtained a judgment against Samuel Blocher, Isaac Shoemaker, and Joseph R. Taylor; and by virtue of legal proceedings on that judgment, the premises in controversy were sold on the 7th June, 1847, to E. P. Oliphant. The sheriff's deed was not made until the 9th October,

[Hersey *v.* Turbett.]

1847. This purchase was made for Mr. Patterson, and on the 22d January, 1851, the premises were conveyed by Mr. Oliphant to Turbett, in trust for Patterson. On the next day Turbett conveyed to Hersey, who, on the same day, executed the mortgage on which this suit is founded. There is nothing on the record of the judgment in favour of Nathaniel Ewing tending to show that it was given for one of the debts which were to be secured by Blocher & Co. in their purchase from Mr. Veech. The court below instructed the jury that the sale under this judgment " conferred a perfect title upon the purchaser, and discharged the title in the hands of Veech from the remaining trusts." In giving this direction, we think that the court fell into error. It assumes that the legal title remained in Mr. Veech at the time of the sheriff's sale. This is probably correct. If so, a sale on a judgment against the equitable interest of Blocher & Co. could not discharge it unless Mr. Veech himself was instrumental in procuring the sale; and his assent to it should appear on the record, or be of a character so open as to give bidders an opportunity of knowing that his title was to pass to the purchaser along with the equitable interest of Blocher & Co. Although Mr. Veech was a trustee for the creditors of Thomas Foster, whose money had paid for the sheriff's title in his hands, he stood in no other relation to Blocher & Co. than that of a vendor holding the legal title until the purchase-money was paid. The judgment against Blocher & Co. bound only their equitable interest. A sale on that judgment, as a general rule, could pass no more than their interest to the purchaser. But when the vendor himself obtains a judgment against his vendees for the purchase-money, and he proceeds to sell the land on such judgment, without reservation of his legal title, it is deemed an election on his part to sell not only the vendees' title, but his own. This is the principle settled in Love *v.* Jones, 4 *Watts* 465, Horbach *v.* Riley, 7 *Barr* 81, and Vierheller's Appeal, 12 *Harris* 105. But this principle has no place in the present case, because there is no evidence that Mr. Veech, the vendor, had authorized or directed the sale on Mr. Ewing's judgment, nor was there any evidence that the record contained any notice to purchasers that that judgment was for a part of the purchase-money. There is, besides, evidence to justify the jury in finding that Mr. Ewing was not the only person interested in the purchase-money due by Blocher & Co. If this was the case, he had no right to control the legal estate in the hands of Mr. Veech, or to do any act by which it could be "discharged from the remaining trusts."

If the legal title had been conveyed by Mr. Veech to Blocher & Co. without taking a mortgage on the premises for the unpaid purchase-money, before the entry of Mr. Ewing's judgment, the sale under that judgment would of course have passed the whole

[Hersey v. Turbett.]

estate to the purchasers. The same effect might have been produced if the legal title had been conveyed subject to a mortgage given by Blocher & Co. to the persons entitled to the purchase-money, and one of the mortgagees had proceeded to sell on a judgment for one of the debts secured by the mortgage. But in that case, the fact that the judgment was for a part of the mortgage-debt should be indicated by the record, or in some other form, so that purchasers, by reasonable diligence, might make themselves acquainted with it, in time to bid understandingly at the sale.

. It follows from these views that the 6th and 7th assignments of error are sustained. The 1st, 4th, and 5th depend on the covenant of warranty entered into by Mr. Patterson. As this is not given in the paper-book, we can give no opinion on the propriety of the decisions referred to in the specifications of error last mentioned.

The 2d and 3d assignments complain of the exclusion of two records of ejectment with conditional judgments requiring the payment of a sum of money by Blocher & Co., the first to Mr. Veech, and the second to Mr. Paull, to whom Mr. Veech, after recovering judgment on the first suit, had conveyed the legal title. The first ejectment was brought to December Term, 1843, No. 134, by James Veech v. Samuel Blocher, Isaac Shoemaker, and Joseph R. Taylor. The 2d was brought by the defendants in the first against James Paull and Andrew Gillis. The record of the first judgment is not given in the paper-book, and it is therefore impossible to say whether it was properly rejected or not. Nor can we say whether the parol evidence offered to supply a defect in that record was properly excluded. If the paper containing the conditions requiring the payment of the purchase-money, said to have been filed with the judgment, was, through some mistake, not filed, or if after it was filed it was lost, the proper course is to apply to the court having jurisdiction of that cause, and having the custody of the record, to amend it, or to supply the defects in it occasioned by the loss of material papers. We cannot do this in a collateral action. In this suit we must judge of the record as we find it when offered in evidence: Hoffman v. Coster, 2 Wh. 453. If we were permitted to take the date and nature of this judgment from other sources than the record returned on this writ of error, we might readily understand from the opinion of the court in Paull v. Oliphant, 2 Harris 349, that the judgment was entered in June, 1847, and that the record contains the entry of "Judgment by consent for plaintiff—for conditions see paper filed." As the law then stood, it did not conclude the rights of the parties, although time was of the essence of the finding in regard to the payment of the purchase-money, because the Act of 5th May, 1841, had abolished the rule of law established by the decision in Seitzinger v. Ridgway, 9 Watts 196. But the Act of

[Hersey *v.* Turbett.]

21st April, 1846, partially restored that rule. It operated on conditional judgments which had been entered on verdict or on confession before its enactment, and since the Act of 5th May, 1841, unless the defendants therein brought a new action to re-examine their merits within two years. The ejectment of Blocher & Co. *v.* Paull and Gillis, No. 92, March Term, 1847, was brought within two years, and, taken in connexion with the first judgment, if the record of the first suit should be perfected so as to make it available, would conclude the rights of the parties. Standing by itself, although a conditional judgment requiring the payment of purchase-money within a specified time, the last judgment would not be conclusive, because, through an oversight in the language of the Act of 1846, it is confined to conditional judgments rendered in actions brought by the vendors to enforce the payment of the purchase-money: Brown *v.* Nickle, 6 *Barr* 390. That action having been brought by the vendees and not by the vendors, must be connected in the evidence with the former decree, in order that it may be brought within the particular clause of the Act of 1846 which concludes the parties in actions brought by vendees. The sheriff's sale to Mr. Oliphant took place on the 7th June, 1847. At that time the action of Blocher & Co. *v.* Paull was pending, and the conditional verdict was rendered in it on the 30th September, 1847. On the 9th October, 1847, Mr. Oliphant received his sheriff's deed. On the 4th October, 1850, final judgment was rendered against Blocher & Co. for default of payment of the money according to the decree. When Mr. Oliphant purchased the interest of Blocher & Co., pending the ejectment, he was bound to take notice of it, as *lis pendens*. It was his duty to prosecute his rights in that action. If money was to be paid to perfect his title, he acquired the right by his purchase to pay the money and receive the title. He is as much bound by the decree in that suit as if he had been a party: 2 *Ves. & Bea.* 204; 2 *Mad. Chan.* 189. These are our present impressions in regard to the effect of these two ejectments and the judgments rendered in them respectively, from the best information we can gather from the paper-book and the opinion of the court in Paull *v.* Oliphant, as reported in 2 *Harris* 342. But what we have said on this part of the case must not be regarded as deciding anything conclusively touching the effect of those two records, because the first, on which the whole matter depends, is so defectively presented that we cannot venture to say that it was error to reject it. The suggestions we have made are designed to enable the parties to present this case in a better shape on the next trial.

The judgment is to be reversed for the 6th and 7th errors assigned. What has been said renders it unnecessary to discuss more particularly the 8th, 9th, and 10th specifications.

Judgment reversed and *venire facias de novo* awarded.