# Davis's Appeal.

Land was sold for $3000, upon which was a mortgage of $11,000, the deed reciting a consideration of $14,000. The deed was accompanied by a separate covenant on the part of the vendor that the mortgage-debt should not be called in for five years if the interest was punctually paid. This agreement also contained a recital that the vendor had conveyed " for the sum of $3000, a lot of land subject to the payment of a mortgage of $11,000." The mortgage having been sued out, upon a sale of the property, the whole debt was not realized, and it was sought to recover the balance from the vendee. *Held*, that the vendee had not personally assumed the payment of the mortgage-debt, and the claim for this balance could not be sustained.

February 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1877, No. 186.

Appeal of Edward M. Davis from the decree of the court dismissing his exceptions to the report of the auditor of the account of the assignee of William H. Lippincott for the benefit of creditors.

The auditor, Henry Wharton, Esq., found the following facts: ·

Mr. R. P. White presented the claim of Mr. E. M. Davis for the sum of $2206.50, under the following circumstances: Mr. Davis, in the year 1874, by deed dated the 28th day of March of that year, and recorded in Montgomery county in book No. 217,

p. 1, conveyed to the assignee a piece of ground at Chelten Hills, in that county, adjoining property on the Old York Road, belonging to him, containing about fourteen acres and a half. The consideration expressed in the deed is the sum of $14,000. At the date of this instrument the property was, in point of fact, subject to a mortgage-debt of $11,000 to Edward Hopper, executor of James Mott, deceased. But no mention of any kind of this mortgage-debt is made in the deed. There is to be found no covenant, express or implied, on the face of the latter for its payment or assumption by the grantee.

The history of the transaction is as follows :

The lot in question lay between property belonging to Mr. Lippincott and Mr. Davis. Mr. Davis had been anxious to dispose of it to the former, and it seems had once or twice spoken to him upon the subject of a purchase by him. On the 24th day of February 1874, Mr. Davis addressed to Mr. Lippincott a letter. In this letter in which he sets out his reasons for considering the purchase at the price advantageous to Mr. Lippincott, and says : "I told you I have $11,000 on it that can run for five years from March 1st. Now with this on it, if you will give me $3000 cash on the 1st day of March, I will let you have all the evergreens, all the stone, nearly $300 worth, and the cut wood that belongs to me. It is a rare bargain, and I sell it at this sacrifice because I want money."

There is nothing anywhere to indicate the desire or expectation on the part of Mr. Davis that Mr. Lippincott should assume, or be personally responsible for, the mortgage-debt—it is not even an offer to sell for $14,000, part in mortgage and part in cash. Indeed the statement that the "$11,000 can run for five years," so far as it has any significance, points the other way. It is rather the vendor undertaking to indemnify the vendee.

The letter being satisfactory to Mr. Lippincott, he placed it in the hands of his conveyancer and counsel, Mr. Littleton, with instructions to see Mr. Davis, and if he could do no better to close on that basis. According to his testimony there were no special instructions on either side as to how the deed was to be drawn, nor is there any agreement shown on the subject, parol or otherwise, outside of the letter. This, consequently, is the foundation of the deed. Mr. Littleton, who acted, he said, solely for the vendee, in which Mr. Davis agrees, deliberately omitted any covenant or assumption of the payment of the mortgage-debt in the deed, express or implied, which he did for the very purpose of preventing any personal liability on the part of his client for the principal outside of the property conveyed. After the deed was prepared it was executed by Mr. Davis without objection on account of the absence of any agreement to assume the mortgage. He, however, says that Mr. Littleton told him that it was "all right," of which the latter has no recollection, but he says that he has no

8 Norris—18

doubt that if Mr. Davis did ask the question, he so answered him, "as I thought it was all right in my view."

With reference to the question as to what the purchase-money was to be, apart from the terms of the letter, Mr. Lippincott and Mr. Littleton, according to their testimony, both understood that the *price* was $14,000, but to have regarded that as its arithmetical measure, not as an agreement by Mr. Lippincott to pay or assume the payment of that sum. Mr. Lippincott, who is now practically indifferent in the matter, is positive on this point. He says: "I never agreed to pay that mortgage." In reply to the question, "When was it agreed that you were to pay $3000 and *retain* the $11,000," he said, "I don't think it ever was so agreed." He had known before that there was a mortgage for $11,000, but had understood that it was to be "deducted from the purchase-money." By this the auditor understood having reference to the rest of the witness's testimony, that the purchase-money was to be so much less, not that the mortgage-debt was to be taken out of it.

The deed was accompanied by a separate covenant on the part of Mr. Davis, that the mortgage-debt should not be called in for five years, if the interest was punctually paid, a copy of the material part of which is annexed. This agreement appears to sustain Mr. Lippincott's understanding in two ways. In the *first place* it recites that "Whereas, I, Edward M. Davis, have this day conveyed to William H. Lippincott, for the sum of $3000 (not $14,000), a lot of land in Cheltenham township, &c., subject to the payment of a mortgage-debt of $11,000 to Edward Hopper, &c., and *secondly*, the taking an express covenant from the vendor, to indemnify the vendee for a limited period, without any corresponding undertaking on the part of the latter, to indemnify the former at the end of the period, is strong to show that this was not intended. The omission of such a covenant from a document where it ought to have been inserted, is more significant than mere silence.

After Mr. Lippincott's assignment, the mortgage was sued out by reason of the non-payment of the interest, as was testified to by Mr. Hopper, the mortgagee, which of course abrogated this last-mentioned covenant of guaranty. The property was sold at sheriff's sale on April 19th 1875, of which there can be no doubt that Mr. Davis had notice, and was bought by his son, by whom it was a few weeks after sold and conveyed to a Mr. Dobbins, for $10,000. Mr. Davis, the father, negotiated this last sale, but denied having any interest in the matter. The judgment on the mortgage was for $11,852.50; on this, Mr. Hopper received in cash from the sheriff $4646, which, with a mortgage from the purchaser at the sheriff's sale for $5000, made $9646, leaving a balance on the judgment, of $2206.50, which was paid by Mr. Davis to Mr. Hopper, on 17th June 1875. It was for this balance that Mr. Davis claimed against

[Davis's Appeal.]

the assigned estate; he has also brought suit, therefore, against Mr. Lippincott personally.

Upon the foregoing facts the auditor disallowed the claim of Mr. Davis, and his exceptions being dismissed he took this appeal.

*R. P. White*, for appellant.—Of course it is better to have a statement in the deed that the property is conveyed subject to an encumbrance; by doing so the proof is manifested by deed. From this has grown the practice of inserting the words under and subject, &c., in the deed, and consequently they have appeared in nearly every case that has come up before the Supreme Court. But it has never been held that these words are requisite to cast the duty of indemnifying the vendor upon the vendee, and the contrary was ruled in Taylor *v.* Preston, 29 P. F. Smith 436; Buckley's Appeal, 12 Wright 491.

The assumption may be proved by parol and it will be implied from an abatement of the purchase-money: McCracken's Estate, 5 Casey 428; Kostenbader *v.* Spotts, 30 P. F. Smith 433.

Wherever the mortgage is counted as part of the purchase-money, the vendee is personally liable and is bound to indemnify the vendor: Thomas *v.* Pledwell, 7 Vin. Abr. 53, pl. 5: Kearney *v.* Tanner, 17 S. & R. 97; McCracken's Estate, *supra;* Metzgar's Appeal, 21 P. F. Smith 330; Hoff's Appeal, 12 Harris 205; Woodward's Appeal, 2 Wright 327; Blank *v.* German, 5 W. & S. 42; Lennig's Estate, 2 P. F. Smith 135; Girard Life Ins. Co. *v.* Stewart, 5 Norris 89.

*John M. Thomas*, for appellee.—The appellant's position is in advance of any case decided in this state, and goes to the length that whenever a purchaser buys real estate which is subject to an encumbrance, the law will imply an agreement on his part to pay it, as in arriving at the price to be paid the encumbrance must be deducted from the full value, which is in effect a retention of so much of the purchase-money as will pay the encumbrance. In Kearney *v.* Tanner, 17 S. & R. 97, the court emphatically denied this to be the law.

Where the contract of sale has been executed by the acceptance of a deed, there must be an express charge in the deed, or the contemporaneous agreement must show an assumption by the vendee. If he did not, the insertion of the words "under and subject," &c., in the deed or in the agreement, did not, *per se*, render him personally liable. These words are only evidence of the fact of the assumption, not conclusive of it: Kearney *v.* Tanner, 17 S. & R. 97; Blank *v.* German, 5 W. & S. 42; Metzgar's Appeal, *supra;* Girard Life Ins. Co. *v.* Stewart, *supra*.[1]

---

[1] See Moore's Appeal, 7 Norris 450, and Samuel *v.* Peyton, Id. 465.—REP.

[Davis's Appeal.]

The judgment of the Supreme Court was entered, March 24th 1879,

PER CURIAM.—Upon the evidence before us we see no reason to correct the findings of the learned auditor in the court below, upon the questions of fact, and on the facts as found by him we think the conclusion at which he arrived was right.

> Decree affirmed and appeal dismissed at the costs of the
> appellant.