## A. G. GREEN ET AL. v. JOHN S. RICK.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 1, 1888—Decided October 1, 1888.

1. When land is conveyed under and subject to the lien of a mortgage securing the bond of the grantor, the conveyance in this form creates a convenant on the part of the grantee to indemnify the grantor against the mortgage debt: Davis's App., 89 Pa. 272.
2. In a joint obligation, each of the obligors owes to the others the exercise of good faith for their joint interest : a confidential relation thus existing, each owes a duty to disclose to the others anything affecting the joint interest and each will be held, in matters pertaining to the payment and discharge of the joint liability, to act and speak for all.
3. When a purchase is made of property actually in litigation, pending the suit and from a party thereto, though upon a valuable consideration and in point of fact without express or implied notice, the purchaser is affected in the same manner as if he had notice and accordingly will be bound by the judgment or decree in the suit
4. But where a bond and mortgage are in litigation and the land bound by them is not, the purchaser of the land, under and subject to the lien of the mortgage, is not affected by the doctrine of lis pendens.
5. When one of two innocent persons must suffer loss by the default of a third, their rights being otherwise equal, that one should bear the loss who put it in the power of the defaulter to inflict it; therefore, the purchaser of land subject to a mortgage will be protected in a payment made in good faith to the mortgagee of record, in the absence of notice that the debt secured is payable to another as the real owner.
6. Where, in a suit against the obligors in a bond, the purchaser of land subject to a mortgage securing the bond is made a party defendant, and pleads a discharge of the mortgage by a payment to the mortgagee of record, made bona fide and without notice of the fact that the debt secured by the bond is payable to another, and judgment is had against the defendants generally, the judgment against the intervening purchaser will be vacated and that against the obligors in favor of the real owner of the unpaid bond sustained.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 278 January Term 1888, Sup. Ct.; court below, No. 63 February Term 1887, C. P.

On February 4, 1887, a summons in debt was issued in an action wherein John S. Rick, for use of Richard Wenrich, ex-

ecutor of Magdalena Peiffer, deceased, was plaintiff, and Albert G. Green, Joshua Keely and Fannie A. Keely, his wife, were defendants. The declaration averred an indebtedness by the defendants on a bond dated April 1, 1881, conditioned for the payment of $1,100 to John S. Rick; that the money due thereon was the property of Magdalena Peiffer, held by said Rick under a revocable deed of trust, subsequently revoked by said Magdalena Peiffer, now deceased, and that defendants refused to pay the said money to her executor. The defendants pleaded payment.

Before the trial, The Northwest Building & Savings Ass'n presented its petition, alleging that by indenture of A. G. Green and wife and Joshua Keely and wife, to said association, dated November 6, 1882, and duly recorded, it had become the owner in fee simple of the premises described in a certain mortgage executed by said obligors to secure the payment of the bond against them on which the suit was brought, whereupon, by the order of the court the said association was made a party to the suit and permitted to defend pro interesse suo. The association then pleaded specially the said facts and, also, that in purchasing the property from the mortgagors it deducted the amount of the mortgage from the purchase money, and afterwards, on December 8, 1883, without any knowledge or notice that the said bond belonged to Magdalena Peiffer, or of the said deed of trust or its revocation, it paid said mortgage to John S. Rick, the mortgagee on the record, who satisfied the mortgage and delivered up the same, with the accompanying bond, to the association. Thereupon the plaintiff filed a replication, denying that on said December 8, 1883, the said association had no notice or knowledge that the 'said bond belonged to Magdalena Peiffer, and averred that the said association then knew that Rick had no right to receive the money due upon said bond, and tendered issue, which'was accepted.

At the trial on October 18, 1887, it was made to appear that on April 1, 1881, A. G. Green and Joshua Keely and Fannie A. Keely, his wife, borrowed from John S. Rick the sum of $1,100, and gave him a bond for that amount. At the same time they borrowed from another person the sum of $900, and to secure the bonds for both loans, they executed to Rick individually a mortgage of even date for $2,000 upon real

estate owned in common by A. G. Green and Fannie A. Keely. The $1,100 loaned by Rick belonged to one Magdalena Peiffer, who, by a deed of trust, dated March 16, 1878, had transferred her property to him upon certain trusts therein designated. On June 30, 1881, Mrs. Peiffer executed a deed revoking the deed of trust, and on August 31, 1881, filed a bill in equity averring Rick's refusal to surrender the trust property and praying for a decree directing him to do so. In this bill the said bond was specifically described as part of the trust property. On February 3, 1883, the court made a decree as prayed for in the said bill and ordered Rick to surrender the said trust property to Mrs. Peiffer, and on April 14, 1884, this decree was affirmed by this court: Rick's Appeal, 105 Pa. 528. In the meantime, on November 6, 1882, A. G. Green and Joshua Keely and Fannie A. Keely, his wife, had conveyed the mortgaged property to the Northwest B. and S. Ass'n, subject to the mortgage.

After the affirmance of the decree directing Rick to account for the trust property, he filed his account, charging himself, inter alia, with the $1,151.75 received in payment of the bond. Mrs. Peiffer having died, her administrator pendente lite filed exceptions to this account, alleging inter alia that Rick was without power to receive this payment, but the auditor reported a decree charging Rick with it and finding a balance due by Rick to Mrs. Peiffer of $1,093.03.

The jury having been sworn, the bond in suit, produced by the defendants' counsel on demand, was put in evidence by the plaintiff, who then rested.

In the defendants' case in chief, it was shown by the testimony of officers of the Northwest B. & S. Ass'n, that when it became the owner of the premises subject to the mortgage, on November 6, 1882, it detained enough of the purchase money to meet the mortgage, and that on December 8, 1883, it had paid the mortgage debt by two checks, one for $1,151.75 to John S. Rick, and the other for $931.44 to A. G. Green, then the owner of the smaller bond, both present in person; and that at that time the witnesses had no knowledge that any other person had any interest in the mortgage beside A. G. Green and John S. Rick. The mortgage was satisfied when paid, and the bond turned over to the building association.

In the rebuttal case, the plaintiff called A. G. Green and by him proved that the bond in suit had an indorsement on the back of it, to wit: "This bond I hold as trustee and in trust for Magdalena Peiffer, who furnished the money to invest for her," which was in witness's handwriting. The indorsement was then offered in evidence; objected to by the defendants as irrelevant. Objection overruled, and offer admitted.[3]

The plaintiff then offered in evidence the record of proceeding at No. 302 Equity Docket, 1881, Magdalena Peiffer v. John S. Rick, showing the filing of a bill in equity in which the deed of trust and revocation set forth in the declaration are mentioned, and in which the bond on which this suit is brought, is specifically described and averred to be the property of Magdalena Peiffer; and all the proceedings in the said case, terminating in a decree by the Court of Common Pleas of Berks county, adjudging that the deed of trust had been revoked by the deed of revocation, and an affirmance of the said decree by the Supreme Court on appeal by the defendant therein. Defendants object, (1) because the evidence is improper at this stage of the case; (2) because the evidence is incompetent under the pleadings in the case; (3) because the evidence is irrelevant.

Objection overruled, and offer admitted.[4]

A. G. Green was then recalled for the plaintiff and testified that he was the attorney of record, in the equity case referred to, for John S. Rick and remained his counsel to the end of it.

In sur-rebuttal, the defendants offered in evidence "the account of John S. Rick, trustee of Magdalena Peiffer, filed in pursuance of the decree entered in the equity suit, showing the receipt of the money due on this bond and the proceedings on said account showing a final judgment entered against John S. Rick for the said moneys, on behalf of the plaintiff, which judgment was accepted by the plaintiff and steps taken by him to enforce its payment; the account also showing that John S. Rick continued in the management of the estate until final affirmance of the decree by the Supreme Court." Objected to by plaintiff, because the record offered itself shows that there was no ratification of the said payment, but a protest against Rick's right to receive the same; and because it is generally irrelevant, immaterial and incompetent.

Objection sustained and offer refused.[7]

The case was then closed on the evidence, when ERMEN-TROUT, J., answered the points presented and charged the jury as follows:

The defendants have submitted certain points, which we will answer:

1. That John S. Rick was legally entitled to receive payment of the $1,100 bond on December 8, 1883, and having received it, the plaintiff cannot recover.

Answer: This is negatived.[1]

2. The sale of the property by Green and Keely to the Northwest B. and S. Ass'n, subject to the $2,000 mortgage, had the effect of making the building association primarily liable for the payment of the mortgage to the extent of the value of the property; and, if the building association paid the $1,100 bond, without any knowledge that the plaintiff claimed any interest therein, the verdict must be for the defendants.

Answer: This point is negatived.[2]

3. There is no evidence in the case showing knowledge by the building association, that John S. Rick was not entitled to receive payment of the $1,100 bond secured by the mortgage.

Answer: This is negatived.[5]

4. If the jury find that Rick did not cease acting as trustee after the revocation of the trust in 1881, until the final decree of the Supreme Court in April, 1884, the plaintiff was bound to give notice of the revocation of the trust to the debtors, especially after the decree of the Court of Common Pleas in February, 1883.

Answer: This point is negatived.[6]

5. Under all the evidence in this case, the verdict must be for the defendants.

Answer: This point is also negatived.[8]

The plaintiff has submitted this point:

1. The court is respectfully requested to instruct the jury that their verdict must be for the plaintiff in the sum of $1,100, with interest from January 1st, 1883, making altogether the sum of $1,359.42.

Answer: This point we affirm.[9]

This renders it unnecessary for the jury to take any responsibility in the case, and the verdict for $1,359.42 will be taken accordingly.

Arguments.

The jury rendered a verdict for the plaintiff for $1,359.42, as directed. A rule for a new trial being discharged, judgment was entered on the verdict, when the defendants took this writ. The errors assigned were:

1, 2. The answers to defendants' 1st and 2d points.[1] [2]

3, 4. The admission of plaintiff's offers.[3] [4]

5, 6. The answers to defendants' 3d and 4th points.[5] [6]

7. The refusal of the defendants' offer.[7]

8. The answer to defendants' 5th point.[8]

9. The answer to plaintiff's point.[9]

*Mr. Isaac Hiester* (with him *Mr. H. A. Zieber* and *Mr. W. P. Bard*), for the plaintiffs in error:

1. If the defendants' first point was correct, it rules the case in their favor. The defendant association made payment of this bond not only after the Court of Common Pleas had made a decree which established that the trust had been revoked, and which commanded Rick to return the trust property to Mrs. Peiffer, but also after that decree had been superseded by an appeal and a certiorari. Pending the appeal, Rick was trustee de facto if not de jure, with power under the law to receive debts due to the trust estate; and his account, which was offered in evidence, shows that he actually performed the duties of trustee, without hindrance, until the decree below was affirmed by this court. The deed of trust was irrevocable on its face: Rick's App., 105 Pa. 528, and could not be revoked by the grantor except for reasons appearing dehors the deed. It was therefore like letters of administration, which when once granted, though fraudulently obtained, enable the administrator to act until they are finally revoked by a decree finding the fraud, and which continue in force pending an appeal until such decree is affirmed: Shauffler v. Stoever, 4 S. & R. 202.

2. The defendants' second point should have been affirmed. When Green and Keely sold the land bound by the mortgage to the defendant association, permitting the amount of the mortgage to be deducted from the purchase money, in substance, while the effect of the transaction did not relieve them of personal liability on their bond, they became sureties and the purchaser of the mortgaged property for the time being be-

came primarily liable for and charged with the duty of paying the debt: McCall v. Lenox, 9 S. & R. 302; De Witt's App., 76 Pa. 283; Commonwealth v. Wilson, 34 Pa. 63 ; Bury v. Sieber, 5 Pa. 431; Burke v. Gummey, 49 Pa. 518. If this judgment stands, it will have to be levied first out of the lands of the building association. Mr. Green was not the association's counsel; neither was his knowledge their knowledge, nor could his suffering them in good faith to pay the money to the wrong person, impose on him any liability to pay the money a second time for them. Much less could it impose any such liability upon Mr. and Mrs. Keely, his co-obligors.

3. The admission in evidence of the indorsement on the bond, for the purpose of showing knowledge on the part of the association that the money belonged to Mrs. Peiffer, and that Rick had no right to receive it, was error. A debtor may safely pay to the obligee in the bond, without production of the bond, though it has been assigned and the debtor has not been informed of the assignment: Bury v. Hartman, 4 S. & R. 177; Horstman v. Gerker, 49 Pa. 288. The indorsement did not refer to any deed of trust, and showed only that Rick had invested the money as trustee for Mrs. Peiffer, and as such trustee he was entitled to receive payment of interest and principal: Baldwin v. Billingsley, 2 Vern. 539.

4. It was error to admit in evidence the record of the suit in equity. Under the pleadings, the only evidence admissible was proof of knowledge on the part of the association that the bond was the property of Mrs. Peiffer, and that Rick had no right to receive payment. The pleas of payment by Green and Keely admitted only the execution of the instrument: Roop v. Brubacker, 1 R. 304. The record of the equity suit, could throw no light on the question of the knowledge of the association of the subject matter of the suit. The association was not a party to the suit. Actual notice on the part of its officers was not alleged, and the doctrine of lis pendens does not affect a stranger to a suit with constructive notice: Dovey's App., 97 Pa. 163. Lis pendens applies only to purchasers from a party to the suit, of the thing in controversy: Bispham's Equity, § 274; Hopkins v. McClaren, 4 Cow. 678; Wade on Notice, § 360; Parks v. Jackson, 11 Wend. 442. That Green, one of the owners of the equity of redemption, had

actual notice of the matters alleged, did not affect the building association; a purchaser without notice from a purchaser with notice, is protected: Perry on Trusts, § 830; Wade on Notice, §§ 363, 368.

5. The loss occasioned by Rick's insolvency must fall upon one of two innocent parties, namely, on the building association, who paid without knowledge of Mrs. Peiffer's interest in the bond, or on Mrs. Peiffer, who appointed an untrustworthy agent and made the loss possible. It is well settled, that of two innocent parties, the one whose agent causes the loss must suffer: Penn. R. Co.'s App., 86 Pa. 80; Jeffers v. Gill, 91 Pa. 290.

6. The account of John S. Rick, filed in pursuance of the decree entered in the equity suit, after the decree was affirmed in this court, shows inter alia that the plaintiff herein accepted the final decree made, caused judgment to be entered upon it, and pursued Rick with an attachment to enforce payment of the balance. It is obvious that this conduct was a ratification of Rick's action in receiving the money: Wade on Notice, § 367.

7. The direction to the jury to find for the plaintiff against all the defendants, involved a conclusion that there was no fact upon which it was necessary for the jury to pass, that Rick had no right to receive payment of the bond, and that, even though the building association had no knowledge of the circumstances, it must be held to make payment a second time.

*Mr. Cyrus G. Derr* (with him *Mr. Geo. F. Baer* and *Mr. Jeff. Snyder*), for the defendant in error:

1. When Mrs. Peiffer, on June 30, 1881, executed the deed revoking the transfer in trust to John S. Rick previously made by her, Rick ceased to have any powers whatever with regard to her estate. His powers ceased, and but the duty of paying and delivering over the trust estate to Mrs. Peiffer remained. Payment of debts owing to the estate was thenceforth due to Mrs. Peiffer herself, and no debtor, having knowledge of the revocation, could discharge himself by a payment to Rick. The equity proceedings were necessary, not to terminate Rick's trusteeship, but merely to compel him to surrender the prop-

erty. And, though the deed was irrevocable in its terms, it was revocable in its effect: Rick's App., 105 Pa. 529. The principle of Shauffler v. Stoever, 4 S. & R. 201, is inapplicable, as an administrator is an officer of the court, and until actually ousted by a final decree, he is at least an administrator de facto.

2. Fannie A. Keely, Joshua Keely and A. G. Green, the obligors in the bond, were partners as to the transaction in question, and the actual knowledge of Mr. Green that the transfer to Rick had been revoked is to be imputed to his co-obligors: Bear v. Patterson, 3 W. & S. 233; Kramer v. Arthurs, 7 Pa. 171; Lindley on Partnerships, § 55 (Am. L. S. *55); Dawson v. Ewing, 16 S. & R. 371; Rhett v. Poe, 2 How. (U. S.) 483.

3. When the obligors conveyed to the building association the property upon which rested the mortgage given to secure their bond, leaving part of the purchase money to be applied under the contract to the mortgage, the association thereby became the agents of the obligors for payment, and as agents were charged with the knowledge which their principals had of the fact of revocation. The bond was the primary obligation, the mortgage merely collateral thereto; and when the obligors appointed the association to make payment for them and furnished the money for the purpose, the association became their agents. Notice to the principal is notice to all his agents: Lindley on Partnerships; Am. L. S. 141*.

4. In so far as the building association may have become invested with the right to equitable consideration, because of the want of actual knowledge on their part of the revocation, they must be relieved, if at all, not by conspiring for the defeat of a recovery against the obligors, and so depriving the plaintiff of money justly due him, but by the control of any execution that may be issued upon the judgment.

5. The filing of the bill in equity by Mrs. Peiffer against John S. Rick, in which the said bond and the mortgage securing it were specifically described, made it impossible for Rick to part with the said securities in any wise to any party, whether by way of sale or transfer, or by acceptance of payment, as such act on his part would impair the control of the court over the subject matter of the litigation, and thus frus-

trate its decrees. Such is now the doctrine of lis pendens: Dovey's App., 97 Pa. 160.

6. The fact that Rick charged himself with the moneys paid him by the building association does not prevent a recovery in this case. The record of that proceeding shows on its face, that there was no ratification by the plaintiff, but a continuous protest against the receipt of said moneys by Rick.

OPINION, MR. JUSTICE CLARK :

In Rick's App., 105 Pa. 528, it was distinctly held, that the deed of trust executed March 16, 1878, by Magdalena Peiffer to John S. Rick, was a mere instrument of agency, and was therefore revocable at pleasure ; that the deed of July 6, 1881, [June 30 ?] and notice thereof on July 12 following, was in effect a complete cancellation of that conveyance, and that all rights arising under the trust thereby ceased. It is true, the deed contained no express power of revocation, but, as it was in the nature of a letter of attorney only, it might be revoked at will. The proceeding by bill in equity was simply in enforcement of the rights accrued under the revocation; the decree of the court was an adjudication in form, of what did exist in fact. This being so, the bond in suit was on December 8, 1883, properly payable to Magdalena Peiffer and not to John S. Rick, in whose name it was executed.

The obligation upon which the money was payable was signed by A. G. Green, Joshua Keely, and Fannie Keely; it was a joint obligation ; it secured the debt, not of any one, but of all the obligors together ; the joint relation was voluntarily assumed and each owed to the other the exercise of good faith for their joint interest. All the obligors were principal debtors ; a confidential relation existed between them ; each owed a duty to the other to disclose anything affecting the joint interest ; and each represented the others, in matters relating to the payment and discharge of their joint liability.

The deed to the building association was "under and subject" to the lien of the mortgage and the conveyance in this form created a covenant on part of the grantee to indemnify the grantors against the mortgage debt: Davis's App., 89 Pa. 272; Taylor v. Mayer, 93 Pa. 42. If the association failed to pay, and the mortgagors discharged the debt, any one

of them might receive the money on the indemnity and release the covenant.

Albert G. Green, being the counsel for Rick, had actual knowledge of the revocation of the deed, of the notice to Rick, of the proceedings in equity, and of the decree; he knew that the money was of right payable to Mrs. Peiffer; he was present in person when the money was paid by the building association and was a party to the misapplication of it; it was his plain legal duty for his own interest, as well as for the protection of the others jointly bound with him in the bond, to disclose the facts which were peculiarly within his knowledge at the time of the payment. If he failed in the discharge of his duty in this respect, and either inadvertently or designedly permitted the money to be misapplied, his co-obligors must charge the consequences of this default to the party who made it. The reasonable rule of the law is, that one person is not to be prejudiced by the unauthorized acts and declarations of another; but there are exceptions to the rule, where there is a joint interest or liability between several voluntarily assumed; in such cases each will be presumed to act and speak for the whole: Clark v. Morrison, 25 Pa. 453.

There is evidence also, notwithstanding the denial of the fact, from which the jury might well have found that the building association knew that the bond was held in trust for Magdalena Peiffer; that fact was plainly noted on the back of the bond, which was then and there present and actually passed into the hands of the association at the time; but there is no evidence that they had any knowledge of the revocation of the trust. The doctrine of lis pendens we think is not applicable in this case. The building association did not buy the bond and mortgage; they bought the land, and the title to the land was not in litigation. The bill in equity controverted the title to the bond and mortgage, and in buying the land the rightful ownership of the mortgage upon it was not involved; its existence was admitted and the conveyance was under and subject to it.

The whole doctrine of lis pendens, in this country, is said to be founded upon the opinion of Chancellor KENT in Murray v. Ballou, 1 Johns. Ch. 566: "The established rule, says the chancellor, is that a lis pendens, duly prosecuted and not col-

lusive, is notice to a purchaser so as to affect and bind his interest by the decree, and the lis pendens begins from the service of the subpoena after the bill is filed. Where a purchase is made of property actually in litigation, pendente lite, upon a valuable consideration, and without express or implied notice, in point of fact, the purchaser is affected in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit: Story's Eq. J., § 405. The principle applies generally, in suits brought in law or equity for the purpose of determining the title to real property: Hersey v. Turbett, 27 Pa. 418; but it is not confined to actions involving title to realty. It is applicable in certain cases involving the title to choses in action, excepting commercial paper not due. In Diamond v. Lawrence Co., 37 Pa. 353, it was held, that the pendency of a suit between a county and a railroad company, in regard to bonds issued by the county in payment of its subscription to the stock of the company, is notice to all the world of the facts alleged in the pleadings therein. Also, in Murray v. Lylburn, 2 Johns. Ch. 441, the principle was held to apply to choses in action, as well as to real estate, and to entitle a cestui que trust, whose land had been fraudulently disposed of by the trustee during the pendency of a suit brought against him, not merely to the land itself, but to the mortgages or other securities taken for the purchase money, against purchasers or assignees claiming title thereto, as well as the assignments made whilst the suit was pending. If, therefore, Rick had sold this bond and mortgage to the building association, pending the proceedings on the bill in equity, the principle of lis pendens would apply without doubt; but we are not aware that the doctrine has ever been carried to cases where the party to be affected by it was not strictly a purchaser, pendente lite, of the property in litigation: See Wade on Notice, 360. In this case it was the land that was sold, not the mortgage, and it was the title to the latter only that was involved in the suit. There is another reason why lis pendens has no application here; those persons only are charged with notice or affected by lis pendens who purchase from parties to the suit: Stuyvesant v. Hone, 1 Sand. Ch. 419; Parks v. Jackson, 11 Wend. 442; Wade on Notice, 369, and other cases there cited. The land was conveyed to

the building association, not by Rick, but by the Keelys and ·Green who were not parties to the suit.

The building association purchased the land subject to the mortgage, payment of which they assumed; they had a right to suppose, in the absence of any notice to the contrary, that the ownership of the mortgage was as it appeared upon the record; they paid the money in good faith upon this assumption; they were innocent of the injury to Mrs. Peiffer and are entitled to protection.  When one of two innocent persons must suffer loss by the default of a third person, if their rights are otherwise equal, that one should bear it, who put it into the power of the defaulter to inflict the loss.  As between Magdalena Peiffer and the building association, who would both appear to be innocent parties, the loss, if one must be borne, should therefore fall on Mrs. Peiffer who originally placed Rick in a position to inflict it.  The pendency of the proceedings on the bill gave no notice, imposed no duty, and restricted no right, which would subject the building association to the decree.  In this condition of the case, the payment of the money discharged the mortgage and the security it afforded was lost.  But upon what grounds shall the plaintiffs be decreed the right to judgment against the defendants in personam?

As to the defendants in this case, who knew, or must be assumed to have known of the revocation of this trust, there was no payment of this debt; payment to Rick was to them no payment at all.  Although the mortgage may be discharged, the debt still remains, and the debtors by whose default the money miscarried are still liable for payment thereof.  This suit is on the bond and we see no good reason why the judgment against the defendants should not be sustained.  Where the lien of a mortgage is released or discharged, the debt which it was made to secure stands upon its own footing for the balance unpaid, as if no mortgage had ever existed.  But whether the mortgage was discharged in this case was sought to be ascertained on the trial on the bond; the building association voluntarily came into court and asked leave to defend pro interesse suo; an issue was framed as between the plaintiff and the building association involving the question of the good faith payment of the mortgage: defendants pleaded pay-

ment and the entire matters at issue were submitted to the jury in the same trial. The verdict for plaintiff, although general in form, is equivalent to a verdict against the defendants for the amount of the bond, and against the building association, on the issue raised by the special pleas filed in their own behalf. We find no evidence which will justify the judgment against the building association on this issue. There is not the slightest evidence of notice on part of the association, nor is there any rule of law or of equity which, under the facts in this case, would restrict their rights to have this lien discharged.

> The judgment entered against the building association is therefore reversed, but the judgment against Albert G. Green, Joshua Keely and Fannie Keely, the defendants, is affirmed.